**Martin RIVERA–GOMEZ, et al.,**
**Plaintiffs, Appellants,**

v.

**Rafael Adolfo de CASTRO, et al.,**
**Defendants, Appellees.**

Nos. 89–1768, 89–1855.

United States Court of Appeals,
First Circuit.

April 5, 1990.

Walter H. Muniz, Old San Juan, P.R., for plaintiffs, appellants.

Anabelle Rodriguez, Asst. Sol. Gen., Guaynabo, P.R., with whom Jorge E. Perez Diaz, Sol. Gen., and Norma Cotti Cruz, Deputy Sol. Gen., were on brief for defendants, appellees.

Before TORRUELLA and SELYA, Circuit Judges, and RE,* Judge.

SELYA, Circuit Judge.

Appellants, quondam employees of the Commonwealth of Puerto Rico, sued their erstwhile agency head, the Ombudsman, under 42 U.S.C. § 1983 (1982).[1] They complained that their ouster was politically motivated and hence infracted their constitutional rights. *See generally Vazquez Rios v. Hernandez Colon*, 819 F.2d 319, 320 (1st Cir.1987) (remarking "steady drumbeat of civil actions involving claimed politically motivated discharges arising out of the change in administration following Puerto Rico's 1984 gubernatorial election").

During our first encounter with this litigation, we agreed with the district court that, absent special circumstances, plaintiffs' claims were time-barred. *See Rivera–Gomez v. de Castro*, 843 F.2d 631, 631–32 (1st Cir.1988) (applicable statute of limitations is one year; plaintiffs, though notified of dismissal on January 3, 1986, did not sue until January 14, 1987). We also ruled that plaintiffs had failed to show a "continuing violation" of a kind which would have avoided the time bar. *See id.; see also Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 183 (1st Cir.1989) (discussing continuing violation theory). We did not entirely close the courthouse

---

* The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

1. For practical purposes, we treat de Castro, the Ombudsman, as the sole defendant and sole appellee. *See Rivera–Gomez v. de Castro*, 843 F.2d 631, 631 n. 1 (1st Cir.1988).

door, however, permitting appellants a further chance to validate their equitable tolling claim. *Rivera–Gomez*, 843 F.2d at 636.

On remand, plaintiffs filed a second amended complaint. After de Castro answered, the district court convened an evidentiary hearing. The parties agreed to restrict the hearing "to the issue of equitable estoppel" and thereby put the limitations question to rest.[2] *Rivera–Gomez v. de Castro*, No. 87–0065 (RLA), slip op. at 3 (D.P.R. June 19, 1989) (hereinafter "D.Ct. Op.").

The court heard considerable testimony, received documentary evidence, and took the matter under advisement. Thereafter, in a comprehensive rescript replete with factual findings, the court concluded that the proof was "not sufficient to support plaintiffs' allegations of equitable estoppel." *Id.* at 16. Accordingly, the case was dismissed.

## I

We begin by addressing the procedural posture in which these appeals arise. When the district court ordered the estoppel issue tried in advance, it did not indicate the source of its power to do so. At first blush, it would appear that the order reflected the provisions of Fed.R.Civ.P. 12(d):

> **Preliminary Hearings.** The defenses specifically enumerated (1)–(7) in [Rule 12(b) ], whether made in a pleading or by motion, and the motion for judgment mentioned in [Rule 12(c) ] shall be heard and determined before trial on application of any party, unless the court orders that the hearing and determination thereof be deferred until the trial.

Fed.R.Civ.P. 12(d). In our judgment, Rule 12(d) is perhaps too infrequently invoked and too often overlooked. In a proper case, it can be an excellent device for conserving time, expense, and scarce judicial resources by targeting early resolution of threshold issues.

■ Despite Rule 12(d)'s reference to an adversary "application," we are confident that a federal district court has the authority to set a preliminary evidentiary hearing sua sponte when, as in this case, the balance of practical and equitable considerations so dictates. *Cf., e.g.,* Fed.R.Civ.P. 42(b) (empowering district court to order separate trial "of any claim ... or of any separate issue" in furtherance of convenience, to avoid prejudice, and/or to promote economy); *Aoude v. Mobil Oil Corp.,* 892 F.2d 1115, 1119 (1st Cir.1989) ("district courts retain the inherent power to do what is necessary and proper to conduct judicial business in a satisfactory manner"); *HMG Property Investors, Inc. v. Parque Indus. Rio Canas, Inc.,* 847 F.2d 908, 916 (1st Cir.1988) (similar). Inasmuch as limitations defenses can sometimes appropriately be raised by motions to dismiss filed pursuant to Rule 12(b)(6), *see Neel v. Rehberg,* 577 F.2d 262, 264 (5th Cir.1978); *Rauch v. Day and Night Mfg. Corp.,* 576 F.2d 697, 702 (6th Cir.1978), Rule 12(d) would seem by its terms to apply where, as here, a preclusive time bar loomed. Yet, the authorities are in some disarray. *See, e.g., Kahnke v. Herter,* 579 F.Supp. 1523, 1525 (D.Minn. 1984) (preliminary hearing not available to adjudicate limitations defense); *Chilcutt v. United States,* 64 F.Supp. 38, 39 (E.D.Ky. 1946) (similar).

■ While we find these cases unpersuasive and think that, in this instance, the district court acted wisely and within its discretion in utilizing Rule 12(d), we need not definitively resolve the issue of whether, and under what circumstances, Rule 12(d) can be utilized as a vehicle for prevenient testing of the sufficiency of a limitations defense. Because appellants neither objected on this ground below nor assigned error to the procedural arrangement in their appellate brief, any shortcoming was waived. *See, e.g., Reilly v. United States,*

---

2. We remarked originally that plaintiffs' equitable tolling argument spoke to two potentially distinct legal theories, equitable estoppel and fraudulent concealment. *Rivera–Gomez,* 843 F.2d at 633 n. 3. Following the parties' lead, we address the matter primarily in terms of equitable estoppel. In any event, drawing fine distinctions between the two closely related doctrines would be superfluous at this juncture; the district court's findings of fact, if sustainable, eviscerate both theories of equitable tolling.

863 F.2d 149, 159 (1st Cir.1988) (failure seasonably to object to procedural order bars appeal based thereon); *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990) (discussing "the settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

## II

The merits of the district court's determination need not occupy us for long. Both the basic factual scenario and the general nature of the conduct which plaintiffs attributed to defendant were sketched in our earlier opinion, *Rivera–Gomez,* 843 F.2d at 631–32, 633–34, and no useful purpose would be served by an exegetic account of the background.

It is settled that parties relying on an estoppel have the burden of proving it. *Clauson v. Smith,* 823 F.2d 660, 663 (1st Cir.1987); *Ross v. Commissioner of Internal Revenue,* 169 F.2d 483, 496 (1st Cir. 1948). In this respect, appellants' case hinged on their allegation that the Ombudsman gave them bogus reasons for their firings and led them to believe, falsely, that they would be reinstated when an augmented budget appropriation arrived. Thus, plaintiffs' theory of equitable tolling depended on their ability to satisfy the trier that defendant knew the true facts but kept them hidden; and that plaintiffs, actively misled by defendant, relied to their detriment. *See, e.g., Torres Ramirez v. Bermudez Garcia,* 898 F.2d 224, 229–30 & n. 2 (1st Cir.1990) (discussing "fraudulent concealment" under federal, and Puerto Rico, law); *Mack,* 871 F.2d at 184–85 (discussing equitable tolling in employment discrimination cases); *Clauson,* 823 F.2d at 661–62 (discussing equitable estoppel in relation to statutes of limitations). In a nutshell, it was incumbent upon plaintiffs to prove, at a minimum, that defendant's representations were so deceptive that they caused plaintiffs' failure to sue punctually.

■ The district court concluded that appellants were several bricks short of the required load. It found, on the one hand, that defendant's conduct was not blameworthy: the Ombudsman "did not deceit-fully misguide [appellants] in any way whatsoever," D.Ct.Op. at 8, but was himself a victim in that he "was never aware of the entire [panoply of relevant] facts." *Id.* at 16. On the other hand, plaintiffs' delay in suing "was not reasonable." *Id.* at 8. Their conviction that, although cashiered, they might be rehired, was not attributable to the Ombudsman's machinations, but "was entirely of their own making." *Id.* at 10. In short, there was no detrimental reliance: "plaintiffs were not ignorant of the facts." *Id.* at 16.

Having combed the nisi prius roll, we see nothing which would justify reversal. The controversy was factbound. The evidence was conflicted. On some points, there were flat contradictions; on others, there were inconsistencies. At a number of evidentiary crossroads, the trier had the option of choosing between opposing inferences. It was the district court's duty to address these matters and find the facts. And the court did so, clearly, authoritatively, and with adequate record support.

In a case like this one—where the judge ascertains the facts and where, substantively and procedurally, the correct rules of law were applied—we review the findings only for clear error. *See* Fed.R.Civ.P. 52(a) (when matter tried to the bench, "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses"). The rule has widespread applicability, governing findings about what an actor intended, *Reliance Steel Products Co. v. National Fire Ins. Co.,* 880 F.2d 575, 576 (1st Cir. 1989); *Keyes v. Secretary of the Navy,* 853 F.2d 1016, 1019 (1st Cir.1988), and about the import of documentary evidence, *Reliance Steel,* 880 F.2d at 576; *RCI Northeast Services Div. v. Boston Edison Co.,* 822 F.2d 199, 202–03 (1st Cir.1987). Moreover, the rule pertains to the court's "election among conflicting facts or its choice of which competing inferences to draw from undisputed basic facts." *Irons v. FBI,* 811 F.2d 681, 684 (1st Cir.1987). Given this standard, appellants' task is a daunting one.

We could at this juncture launch a thoroughgoing recapitulation of the proof, but

aligning the nuts and bolts of so fact-specific a case would serve no precedential end. The district court canvassed matters carefully and made meticulously detailed findings. It relied heavily on credibility determinations. The judge thought that the Ombudsman was "entirely credible." D.Ct.Op. at 7. In contrast, he concluded that "[p]laintiffs' self-serving and subjective characterizations of defendant's actions have little, if any, basis in fact." *Id.* at 10. That being so, the ball game is virtually over. Defendant's testimony was neither severely impeached nor inherently improbable. Once credited, it supported the district court's rationale almost single-handedly.

Then, too, other evidence bulwarked this testimony. The dismissal letters were categoric in their terms. The principal plaintiffs (Rivera–Gomez, Garcia, Bernardini), regardless of what they said at trial, did not act in early 1986 as if they expected the Ombudsman to reemploy them. We have paid particularly close attention to appellants' refrain that the district court "must have overlooked" no less than seven critical, undisputed facts. We understand the lyrics, but the music is off key. Viewing the referenced exhibits and evidence in context, it is more likely, we think, that the district court simply declined to attach decretory significance to these items, individually or collectively. In a bench trial where the judge makes reasonably detailed findings of fact on the pertinent issues, he need not specifically enumerate and reject all of the data he considers inadequate, irrelevant, unreliable, unimportant, or non-dispositive.

In sum, based on an antiseptic appellate record, we are in a perilously poor position to second-guess a decision resting largely on credibility evaluations by a judge who saw and heard the witnesses. *See Anderson v. City of Bessemer City,* 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985) (findings based on tri-

er's credibility determinations "can virtually never be clear error"). Having patiently examined the whole of the evidence, we cannot say that an obvious mistake was made or that the district court's findings were clearly erroneous. The conclusion that there was no equitable tolling must stand. After all:

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Id.* at 574–75, 105 S.Ct. at 1511.

### III

We need go no further.[3] The district court's findings are satisfactorily supported by the evidence and free from legal error. Plaintiffs' complaint was out of time, ergo, appropriately dismissed.

*Affirmed.*

---

**3.** Whether application of plaintiffs' equitable tolling theory presents a question of federal as opposed to Puerto Rico law, a matter left open in our original opinion, *see Rivera–Gomez,* 843 F.2d at 633 n. 3, need not be resolved. In this case, nothing turns on the distinction. *Accord Torres Ramirez,* 898 F.2d at 229–30; *cf. Fashion House, Inc. v. K Mart Corp.,* 892 F.2d 1076, 1092 (1st Cir.1989) (where result unaffected, court may abjure formal choice of law).