Carlos RIVERA–RAMOS, et al.,
Plaintiffs, Appellees,

v.

Julio Cesar ROMAN, et al., Defendants,
Appellants.

Cesar Soto, Defendant, Appellant.

Carlos RIVERA–RAMOS, et al.,
Plaintiffs, Appellees,

v.

Julio Cesar ROMAN, et al., Defendants,
Appellants.

Luis Torres–Massa, Defendant, Appellant.

---

Carlos RIVERA–RAMOS, et
al. Plaintiffs, Appellees,

v.

Julio Cesar ROMAN, Defendant,
Appellant.

Nos. 98–1021, 98–1022, 98–1023.

United States Court of Appeals,
First Circuit.

Heard June 3, 1998.

Decided Sept. 29, 1998.

278

Orlando Fernandez with whom Garcia & Fernandez was on brief for appellant Cesar Soto.

Orlando Duran–Medero with whom Ricardo Rodriguez–Padilla Law Offices was on brief for appellant Julio Cesar Roman.

Robert Ruiz Comas with whom Gaztambide & Plaza was on brief for appellant Luis Torres–Massa.

Charles S. Hey–Maestre with whom Peter Berkowitz was on consolidated brief for appellees.

Before BOUDIN, Circuit Judge, KEETON,* District Judge, and MCAULIFFE,** District Judge.

BOUDIN, Circuit Judge.

This is an interlocutory appeal arising out of a civil action brought in the district court. The individual defendants, present or former Puerto Rico officials, moved to dismiss on grounds of qualified immunity, and the district court denied their request. These appeals followed.

The present suit was brought in October 1993 by two individual plaintiffs—Carlos Rivera Ramos and Armando Rivera Tirado—and their company, Rivera & Rivera, Inc., which

was in turn owned by both of them and by their fathers (who were brothers). According to the complaint, Rivera & Rivera owned a hardware store in the municipality of Aguada, Puerto Rico, which was licensed in 1969 by the Puerto Rico Treasury Department to deal in firearms.

Named as defendants, among others, were the municipality of Aguada; Julio Cesar Roman, mayor of Aguada in 1969; Lieutenant Cesar Soto, then a police officer and the director for the western area of Puerto Rico of the Office of Intelligence of the Puerto Rico Police Department; Commander Juan del Valle, then director and in overall charge of the same intelligence division; and Luis Torres Massa, then superintendent of the Puerto Rico Police Department. Other defendants were named but were later dismissed.

The gravamen of the complaint was that before and during 1969–70, the Puerto Rico Police Department's intelligence division engaged in a practice, later held unlawful under Puerto Rico law, of spying on and keeping dossiers on citizens of Puerto Rico who supported independence for Puerto Rico; that during 1969, an investigation of the two individual plaintiffs was conducted by the intelligence division; that following the investigation the Treasury Department revoked Rivera & Rivera's license to sell firearms and refused an application for a new license; that the police, in late 1969 or early 1970, raided the hardware store and confiscated firearms and ammunition; and that the defendants were responsible for these events (in different ways which are shortly to be described).

As a first cause of action, plaintiffs sought relief under 42 U.S.C. § 1983, urging that the conduct alleged violated plaintiffs' federal constitutional rights of free speech and free association and due process of law. In the second cause of action, the same conduct was described as a violation of the Puerto Rico Constitution and the Puerto Rico Civil Code. The plaintiffs sought compensatory damages for loss of income and emotional pain and

suffering "in excess" of $2 million and punitive damages "in excess" of $1 million. Plaintiffs demanded a jury trial.

Considerable discovery was conducted, and in February and March 1997, the four individual defendants previously named filed motions to dismiss on grounds of qualified immunity. Somewhat later, motions for summary judgment were also filed by defendants, asserting *inter alia* a statute of limitations defense. By order dated August 29 and entered on September 5, 1997, the district court denied the motions to dismiss and for summary judgment by the individual defendants.

In its 25–page order, the district court ruled that plaintiffs had made out a potential claim for violation of their First Amendment rights. The court concluded that the facts were contested, but that there was admissible evidence that, if believed by a jury, could persuade it that the defendants had conducted investigations and kept records of plaintiffs' activities "solely because of their political affiliation" and had used the information to shut down Rivera & Rivera's firearms business based on the individual plaintiffs' political affiliation.

Addressing the roles of the individual defendants in this episode, the district court said that if the plaintiffs' evidence were accepted, a jury could find that Roman had requested the cancellation of the license; that Soto had adopted an investigatory memorandum relating to the plaintiffs' beliefs and affiliations that was forwarded to del Valle; and that del Valle and his superior, Torres Massa, "knew of the illegal conduct of their employees and failed to take corrective measures, thus, exhibiting 'deliberate or callous indifference' to plaintiffs' constitutional rights."

The district court then briskly rejected the defendants' qualified immunity claim, saying that freedom of association for the advancement of beliefs had been established at least since *NAACP v. Alabama*, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), well before the license revocation. The court dismissed the claim against the municipality of Aguada on the ground that it could only be liable for its own policy or customs, that it

had no authority whatever regarding the issuance and revocation of dealer licenses, and that Roman had no authority in this area and could not be acting on behalf of the municipality. Finally, the court said that disputed factual issues precluded resolution of the statute of limitations defense on summary judgment.

■ Three of the four individual defendants (all except del Valle) have brought this appeal asserting qualified immunity. Qualified immunity shields state officials from civil damage liability under section 1983, insofar as their conduct does not violate "clearly established" rights of which "a reasonable person would have known" at the time of the conduct in question. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). With exceptions not here relevant, an order rejecting a claim of qualified immunity is immediately appealable, and this court reviews *de novo*, as a question of law, the question whether a set of assumed facts constitutes a violation of "clearly established law," taking the law as it stood at the time of the conduct in question. *Harlow*, 457 U.S. at 815, 102 S.Ct. 2727; *Souza v. Pina*, 53 F.3d 423, 425 (1st Cir.1995).

■ In its discussion of qualified immunity, the district court took the defendants to be arguing that the creation of dossiers could not have abridged a federal constitutional right in 1969–70 because the Puerto Rico decisions holding the collection program unlawful were not rendered until 1988. The district court responded that by 1969–70 "it was already settled that 'freedom' to engage in association for the advancement of beliefs and ideas" was an aspect of free speech protected against state intrusion by the due process clause, and cited *NAACP v. Alabama*, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). The district court then concluded rather cryptically that plaintiffs' "version of the facts," if proved, would demonstrate a violation of free association rights that were by 1969–70 protected under substantive due process concepts.

■ This court has made it crystal clear, on a number of occasions, that identifying some abstract constitutional right extant at

the time of the alleged violation does not itself show that the conduct alleged is a violation of "clearly established" law. Instead, the focus must be upon the particular conduct engaged in by (or attributed to) the defendants; immunity is forfeited only if a reasonable official would clearly understand *that conduct* to be a violation of the Constitution. The need to focus on specific facts is so well-settled that the issue need not be discussed further.[1]

This brings us back to the vexing question of what facts should be assumed in this case. On motions to dismiss, the facts to be assumed are normally those alleged in the complaint. But here the complaint contained merely bare bones allegations that the actions taken by the defendants were based on the individual plaintiffs' beliefs and associational affiliations; the complaint offered virtually no facts pertaining to individual defendants on which to make a reasoned judgment about qualified immunity.

Nevertheless, Fed.R.Civ.P. 12(c) provides that a motion for judgment on the pleadings is to be treated as one for summary judgment where "matters outside the pleadings are presented to and not excluded by the court...." In this instance, both the motions to dismiss filed by the individual defendants and the plaintiffs' opposition relied copiously on documents, depositions or both adduced through discovery. Far from excluding these "matters," the district court itself drew on some of the same materials in other portions of its order.

One important piece of evidence cited by both sides is a police report dated July 22, 1969, summarizing the views of various witnesses about the character of each of the two individual plaintiffs. Among the witnesses, some appear to have deemed the plaintiffs of good character; others, like the mayor, expressed their opposition to the gun dealer license in terms that could be taken to reflect little more than the view that such licenses should not be in the hands of political enemies; and still others indicated that at least one of the plaintiffs not only held views favoring independence for Puerto Rico but was closely associated with the Movimento Pro–Independencia ("MPI") and, in addition, had expressed personal views that might be taken as endorsements of violence.

This dossier may link all of the individual defendants: then-mayor Roman appears in it as a witness and may have encouraged the investigation which led to its preparation; Lieutenant Soto was the officer who received the dossier from the investigator and apparently forwarded it up the chain of command; and it might be inferred—this is much less clear—that del Valle (director of the intelligence division) and Torres Massa (superintendent of the police department) had this evidence, and perhaps not much more, in formulating any recommendation to the Secretary of the Treasury to revoke the license—if that is in fact what occurred.

If the dossier reflected the central basis for the license revocation, then it would certainly support the plaintiffs' view that their beliefs and associations played a part in the loss of their license. Yet depending on proof or judicial notice of certain contextual facts, it could also give the individual police defendants a very good argument that their conduct was *not* unlawful under clearly established law in 1969–70. We begin by considering the police officials and reserve for the moment the special case of Roman.

In considering what was or was not "clearly established" constitutional law in the 1969–70 time frame, our concern is with the *substantive* law under the First Amendment and not with procedural due process. The plaintiffs knew at the time that their license was revoked, and their arms seized, that these steps had been taken without even minimal procedural due process (accepting *arguendo* their own account of what happened). But a procedural due process claim is not being pursued by plaintiffs in this case, presumably because it would be barred by the statute of limitations. What the plaintiffs presumably did not possess in 1969–70—sus-

---

1. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Ringuette v. City of Fall River*, 146 F.3d 1, 5 (1st Cir.1998); *St. Hilaire v. City of Laconia*, 71 F.3d 20, 24–25 (1st Cir.1995), *cert. denied*, 518 U.S. 1017, 116 S.Ct. 2548, 135 L.Ed.2d 1068 (1996); *Frazier v. Bailey*, 957 F.2d 920, 930 (1st Cir.1992).

picion is a different question—is knowledge of documents, like the dossier, that cast light on the extent to which their opinions and associations underlied the actions taken against them.

The closest First Amendment precedents are Supreme Court cases, circa the 1960s, that involved government action taken against individuals because of their supposed radical political beliefs or associations. These cases involve employment as a school teacher or state-university faculty member, admission to the bar, and even nonsensitive work in a defense plant.[2] These cases provide general language helpful to the plaintiffs, but none of them involves constitutional standards for the denial or revocation of a gun dealer license.

Assuming that police officer defendants "caused" the license revocation or weapons seizure, the Supreme Court cases as of 1969–70 clearly forbade such action based on anyone's general beliefs that Puerto Rico should have independence, or on their membership in organizations devoted to securing such independence by peaceful means. Conversely, we do not think that it would have been a violation of "clearly established law" for police officers to have sought to deny or revoke a firearms dealer license to individuals who had expressed a commitment to violence and who were members of an organization that was reasonably perceived to be committed to violence. *See Robel*, 389 U.S. at 262, 88 S.Ct. 419 (discussing *Scales v. United States*, 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961)).[3]

It is one thing to say that an individual should not be prosecuted or automatically debarred from public employment because of personal beliefs or even membership in an organization whose violent tendencies may not be endorsed by the individual. It is quite another to say that it was or is today *clearly*

*established law* that an individual has a constitutional right to a license as a gun dealer where that person is committed to violence and is a member of an organization that supports violence. However a litigated case might have turned out, the law on this issue was not so plainly settled in 1969–70 as to leave no "room for mistaken judgments." *Malley v. Briggs*, 475 U.S. 335, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

In *Robel* itself, in upholding a First Amendment claim by a worker denied a job in a defense plant because of his views and affiliations, the Supreme Court suggested that a different result might have been reached if the employee had been involved in sensitive matters in the plant. 389 U.S. at 265, 88 S.Ct. 419. And only a couple of years later, the Supreme Court held that gun dealers can be subject to statutorily authorized, warrantless searches without violating the Fourth Amendment in part because "close scrutiny of this traffic is undeniably of central importance to federal efforts to prevent violent crimes and to assist the States in regulating the firearms traffic within their borders" and because gun dealing is a "pervasively regulated business." *United States v. Biswell*, 406 U.S. 311, 315, 316, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) (citation omitted). *See also Huddleston v. United States*, 415 U.S. 814, 824, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974).

Taking the dossier at face value, the police appear to have had a legitimate reason for concern in 1969–70 about the prospect that guns in the hands of Rivera & Rivera might be misused for violent purposes. As a matter of historical fact, there was some violence associated with the independence movement, and there is some indication that the MPI did have a reputation that reinforced police concerns. *See generally* J. Torruella, *The Supreme Court and Puerto Rico* 130–31 (1985).[4] Furthermore, the dossier attributed

---

**2.** *Elfbrandt v. Russell*, 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966) (school teacher); *Keyishian v. Board of Regents*, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967) (university faculty); *Schware v. Board of Bar Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957) (bar admission); *United States v. Robel*, 389 U.S. 258, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967) (defense worker).

**3.** There is no indication of any authority for the seizure of firearms but also no indication that any of the individual defendants played any role in or even contemplated the seizure.

**4.** The question is not whether *in fact* the MPI was dangerous but whether a reasonable police officer could have thought it was in 1969–70. To the extent that such a *perception* of the MPI is

to one of the plaintiffs not only MPI membership but also a remark expressing a willingness to see blood shed in the cause of independence.

The plaintiffs have suggested that the dossier was itself a fabrication, and that the police acted not in reliance on the dossier but simply on the basis of secret communications from then-mayor Soto that were directed at plaintiffs' pro-independence views and not at any supposed penchant for violence. If the plaintiffs have a factual basis for this charge that effectively implicates an individual defendant, this might well bar qualified immunity for him at the present stage. It appears that some witnesses quoted in the dossier may now deny having made the statements attributed to them. Whether these denials would implicate anyone other than the investigator who took the statements, and who is not a defendant, is less clear.

The situation of Roman, one-time mayor of Aguada, is somewhat different than that of the police officers. It is doubtful that one acting as a *public official* who caused the revocation of a firearms license for the reasons ascribed to Roman in the dossier would be protected by qualified immunity; Roman said nothing about violence and his remarks could be read as urging reprisal against political enemies. Alternatively, plaintiffs may have facts, beyond their barren epithets about "conspiracy," that make Roman's actions even more doubtful than what is reported in the dossier.

■ It is less clear that the mayor either was acting as a public official or could be liable under cases that hold private citizens liable where they conspired with or abetted public officials in violating section 1983. *E.g.*, *Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). The town mayor had no authority over the Commonwealth police, and citizens can furnish information to the police without automatically becoming responsible for what the police then do with the

information. *See Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249 (1st Cir.1996). But the defense that Roman should be treated as a private citizen goes to the merits and is not susceptible to interlocutory appeal.

■ Finally, a word ought to be said about the statute of limitations issue that the district court addressed in the same order that rejected the qualified immunity defense. That defense cannot be pursued by interlocutory appeal, *see Pedraza v. Shell Oil Co.*, 942 F.2d 48, 54–55 (1st Cir.1991), *cert. denied*, 502 U.S. 1082, 112 S.Ct. 993, 117 L.Ed.2d 154 (1992); 28 U.S.C. § 1291, and we do not decide it here. But before the district court embarks on further perhaps lengthy proceedings on qualified immunity or an even more cumbersome trial, we owe it to the court and the parties to express one cautionary concern about the district court's order.

■ For section 1983 actions, federal law governs the date on which a cause of action accrues (*i.e.*, when the statute begins to run) while the length of the period and tolling doctrine are taken from local law. *Torres v. Superintendent of Police*, 893 F.2d 404, 406–07 (1st Cir.1990). The Puerto Rico statute provides a one-year period for tort actions. *Id.* Assuming (as is likely) that the statute began to run when the license was revoked in 1969 or 1970, Puerto Rico law would toll the statute of limitations if—because of active or fraudulent concealment—a reasonable person would not have been able to discover the basis for the lawsuit. *E.g.*, *Rivera–Gomez v. de Castro*, 900 F.2d 1, 3 (1st Cir.1990).[5]

■ However, even assuming such culpable concealment, Puerto Rico law requires due diligence by the plaintiff in investigating suspicious circumstances. *See Rivera–Gomez*, 900 F.2d at 3; *Ramirez Morales v. Rosa Viera*, 815 F.2d 2, 5 (1st Cir.1987). The district judge's version of the plaintiffs' own testimony suggests that the plaintiffs admitted that they were told by others in the town and even by the police that the license

disputed by plaintiffs, we do not mean to foreclose the issue on remand.

**5.** *Morris v. Government Development Bank*, 27 F.3d 746, 749–50 (1st Cir.1994); *Torres*, 893 F.2d at 407–08. *But cf. Barrett v. United States*, 689

F.2d 324, 327–30, 333 (2d Cir.1982), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983) (suggesting that a cause of action may in *some* circumstances accrue only upon discovery of the "wrong" rather than the earlier harm).

revocation, seizure of weapons, or both were prompted by plaintiffs' pro-independence views. The district court says that the plaintiffs then submitted sworn statements "clarifying their deposition testimony" and affirming that they were never told "the official reasons" for the closing of the store. Yet the legal standard required them to undertake a reasonable investigation based on suspicious circumstances.

Of course, plaintiffs may argue that there would have been no way for them to learn of the dossiers in less than 20 years, even if they had brought a contemporaneous lawsuit. *Cf. Rivera–Gomez,* 900 F.2d at 3. Or there may be other problems with or answers to the statute of limitations defense that are not apparent on the face of the district court's opinion. But as matters stand, the district court and the parties may want to give some further thought to the due diligence issue before expending resources on the very complex legal and factual problems raised by qualified immunity and a merits trial.

In sum, we conclude that the district court's denial of qualified immunity rested upon a mistakenly abstract view of what is clearly established law and that the case must be remanded for further consideration of the qualified immunity issue consistent with this opinion.

*It is so ordered.*