USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-2114

 EL DIA, INC.,

 Plaintiff, Appellee,

 v.

 GOVERNOR PEDRO J. ROSSELLO, ANGEL MOREY, 
 AND PEDRO ROSARIO URDAZ,
 
 Defendants, Appellants.
 

 APPEAL FROM THE UNITED STATES DISTRICT COURT
 FOR THE DISTRICT OF PUERTO RICO
 
 [Hon. Jose Antonio Fuste, U.S. District Judge]
 

 Before
 
 Boudin, Circuit Judge,
 Aldrich, Senior Circuit Judge,
 and Stahl, Circuit Judge.
 
 

 Joseph D. Steinfield, with whom Hill and Barlow, James F.
Hibey, William R. Sherman, Verner, Liipfert, Bernhard, McPherson
and Hand, Chartered, John Garcia, Garcia & Fernandez Law Offices,
David H. Marion, Jeremy D. Mishkin, Howard J. Bashman, Montgomery,
McCracken, Walker & Rhoads, LLP, Andres Guillemard-Noble, Nachman,
Guillemard & Rebollo, William L. Patton, Thomas B. Smith, Ropes &
Gray, Gustavo A. Gelpi, and Feldstein, Gelpi & Gotay, were on brief
for appellants.
 Bruce W. Sanford, with whom Mark A. Cymrot, Lee H. Simowitz,
Bruce D. Brown, Baker & Hostetler, LLP, Arturo Trias, Miguel R.
Garay Auban, Trias, Melendez & Garay, and Michael Avery.

January 25, 1999

 
 STAHL, Circuit Judge. Puerto Rico Governor Pedro
Rossello and other members of his administration (collectively,
"the Defendants") seek to raise a qualified immunity defense to a
claim that they violated the constitutional rights of plaintiff-
appellee El Dia, Inc. ("El Dia"). Specifically, the Defendants
argue that they did not violate "clearly established" First
Amendment law by allegedly withdrawing substantial government
advertising from a newspaper to punish the paper for criticizing
the Rossello administration. On this interlocutory appeal, we
affirm the district court's denial of the Defendants' motion to
dismiss on qualified immunity grounds.
 I.
 In reviewing a motion to dismiss, we accept all well-
pleaded facts as true and draw all reasonable inferences in favor
of the plaintiff. See Aybar v. Crispin Reyes, 118 F.3d 10, 13 (1st
Cir. 1997). El Dia owns, operates, and publishes El Nueva Dia, a
daily Spanish-language newspaper circulated in Puerto Rico. 
Beginning in January 1997, El Nueva Dia published a series of
articles alleging patterns of fraud and waste in the Rossello
Administration. On April 13, 1997, El Nueva Dia published an
article critical of Governor Rossello's first one hundred days of
his second term in office. On April 14, 1997, eighteen government
agencies that had routinely advertised in El Nueva Dia terminated
advertising contracts with the newspaper. El Dia alleges that the
Defendants ordered withdrawal of the advertising in retaliation for
the critical articles. El Dia also alleges that, in a series of
meetings over several months, the Defendants subsequently offered
to return the advertising to El Dia if the newspaper wrote
favorable editorials regarding certain of the government's
initiatives. 
 On December 9, 1997, El Dia filed a three-count civil
rights complaint under 42 U.S.C. 1983. Count one, the only count
that is the subject of this appeal, requested both damages and
injunctive relief for violations of El Dia's First Amendment rights
predicated on the allegedly retaliatory withdrawal of advertising. 
On January 28, 1998, the Defendants moved to dismiss all claims
seeking to recover money damages against them in their individual
capacities on grounds of qualified immunity. On August 28, 1998,
the district court denied the motion to dismiss. The court found
that the acts alleged in count one, if proven, would violate
"clearly established" law and that the qualified immunity defense
was therefore unavailable. The Defendants now bring an
interlocutory challenge to this ruling. II.
 This court reviews a district court's denial of a motion
to dismiss on qualified immunity grounds de novo. See Elder v.
Holloway, 510 U.S. 510, 516 (1994); Rivera-Ramos v. Roman, 156 F.3d
276, 279 (1st Cir. 1998). 
 Under the doctrine of qualified immunity, public
officials "generally are shielded from liability for civil damages
insofar as their conduct does not violate clearly established
statutory or constitutional rights of which a reasonable person
would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). 
The doctrine protects such officials from liability for mere
"mistaken judgments" about the legality of their actions. Malleyv. Briggs, 475 U.S. 335, 343 (1986). 
 To determine whether a public official has violated
clearly established law, a court must evaluate the objective
reasonableness of the alleged conduct in light of legal precedent. 
See Harlow, 457 U.S. at 818. "The contours of the right must be
sufficiently clear that a reasonable official would understand that
what he is doing violates that right." Anderson v. Creighton, 483
U.S. 635, 640 (1987). We therefore focus our analysis on specific
facts and not on the right in the abstract, see Rivera-Ramos, 156
F.3d at 279-80, but "the very action in question [need not] ha[ve]
previously been held unlawful," Anderson, 483 U.S. at 640; see alsoMitchell v. Forsyth, 472 U.S. 511, 535 n.12 (1985) ("We do not
intend to suggest that an official is always immune from liability
or suit for a warrantless search merely because the warrant
requirement has never explicitly been held to apply to a search
conducted in identical circumstances."); accord St. Hilaire v. City
of Laconia, 71 F.3d 20, 25 (1st Cir. 1995). Rather, "a general
constitutional rule already identified in the decisional law may
apply with obvious clarity to the specific conduct in question,
even though the very action in question has [not] previously been
held unlawful." United States v. Lanier, 117 S. Ct. 1219, 1227
(1997) (alteration in original; internal quotation marks omitted). 
Thus, all that is needed is that, "in the light of the preexisting
law[,] the unlawfulness must [have] be[en] apparent." Anderson,
483 U.S. at 640. III.
 It would seem obvious that using government funds to
punish political speech by members of the press and to attempt to
coerce commentary favorable to the government would run afoul of
the First Amendment. See Rosenberger v. Rector and Visitors of the
Univ. of Va., 515 U.S. 819, 830 (1995) ("[I]deologically driven
attempts to suppress a particular point of view are presumptively
unconstitutional in funding, as in other contexts."); New York
Times Co. v. United States, 403 U.S. 713, 723-24 (1971) ("The
dominant purpose of the First Amendment was to prohibit the
widespread practice of governmental suppression of embarrassing
information.") (Douglas, J., concurring); Grosjean v. American
Press Co., 297 U.S. 233, 250 (1936) (government action constituting
"a deliberate and calculated device . . . to limit the circulation
of information" is unconstitutional). The Defendants argue,
however, that there is no "clearly established" law prohibiting
such conduct. Moreover, the Defendants assert that the withdrawal
of the advertising itself constitutes speech, and that, when acting
as speaker, the government may make content-based choices. Neither
argument is persuasive: the first we reject and the second is
premature.
 Clearly established law prohibits the government from
conditioning the revocation of benefits on a basis that infringes
constitutionally protected interests, see Perry v. Sindermann, 408
U.S. 593, 597 (1972), and from terminating an independent
contractor such as El Dia in retaliation for exercising its First
Amendment rights, see Board of County Comm'rs v. Umbehr, 518 U.S.
668, 685 (1996); Nestor Colon Medina & Sucesores, Inc. v. Custodio,
964 F.2d 32, 40-41 (1st Cir. 1992) (holding that denial of land use
permit in unjustifiable retaliation for applicant's political
expression is a First Amendment violation). Indeed, in the words
of the Supreme Court in Anderson, 483 U.S. at 640, "the very action
in question has previously been held unlawful." See, e.g., North
Mississippi Communications, Inc. v. Jones, 792 F.2d 1330, 1337 (5th
Cir. 1986) (government's withdrawal of advertisements from
newspaper in retaliation for critical editorials and news violates
the First Amendment); Frissell v. Rizzo, 597 F.2d 840, 845 (3d Cir.
1979) (dicta); see also Umbehr, 518 U.S. at 673 (citing North
Mississippi Communications, Inc. with approval). This is not a
case of "mistaken judgment[]" for which the Defendants ought to be
immune from liability. Malley, 475 U.S. at 343. Because the law
was clearly established at the time the Defendants allegedly
withdrew the advertising, the Defendants are not entitled to
qualified immunity. See Harlow, 457 U.S. at 819 ("Where an
official could be expected to know that certain conduct would
violate statutory or constitutional rights, he should be made to
hesitate; and a person who suffers injury caused by such conduct
may have a cause of action.").
 The Defendants' second and related argument, that the
government was acting as a speaker and therefore may make content-
based choices, must be rejected for a different reason: it rests on
a factual premise we cannot now accept. In assessing whether a Fed
R. Civ. P. 12(b)(6) motion was properly denied, we confine our
analysis to the pleadings, as did the district court. See Doyle v.
Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996). Nowhere in the
complaint is there a hint that the Defendants were "trying to
advance [their] own speech interests" by withdrawing the
advertisements. Rather, the complaint alleges that the Defendants
punished El Dia for asserting its speech interests. Discovery may
yet show the Defendants were only, or at least primarily,
interested in "ensuring that the force and credibility of its
advertising messages [we]re not undermined by the surrounding
editorial context." Br. of Defendants at 16. If so, the qualified
immunity question may well be cast in a different light. Cf.Umbehr, 518 U.S. at 685 (giving the government the opportunity to
"persuade the District Court that [its] legitimate interests as
contractor, deferentially viewed, outweigh the free speech
interests at stake"); see also Behrens v. Pelletier, 516 U.S. 299,
307 (1996) (permitting the qualified immunity defense to be raised
at subsequent stages in the same case, even where it has been
previously rejected). Because the second argument is based on
assertions not found in the complaint, we must decline to consider
it on this appeal.
 IV.
 For the foregoing reasons, we affirm the district court's
denial of the Defendants' motion to dismiss on qualified immunity
grounds.
 Affirmed. Costs to appellees.