Roland MARTINEAU, Plaintiff,

v.

Judith KURLAND and City of Boston, Defendants.

No. Civ.A. 95–11832–REK.

United States District Court, D. Massachusetts.

Feb. 8, 1999.

Burton A. Nadler, Petrucelly & Nadler, Boston, MA, for Roland Martineau, plaintiff.

Linda M. Walsh, City of Boston Law Department, Boston, MA, Lynn Worley, Boston, MA, John M. Townsend, Eileen A. Roach, Boston Public Health Commission, Office of General Counsel, Boston, MA, for Judith Kurland, defendant.

Lynn Worley, Boston, MA, John M. Townsend, Eileen A. Roach, Boston Public Health Commission, Office of General Counsel, Boston, MA, for City of Boston, defendant.

## Opinion

KEETON, District Judge.

### I.

Pending for decision is the Defendants' Motion for Summary Judgment (Docket No. 37, filed December 11, 1998), with Memorandum in Support (Docket No. 38). Plaintiff has filed an Opposition to the Motion (Docket No. 40, filed January 19, 1999). Defendants submitted a Reply to Plaintiff's Opposition. (Docket No. 44, filed January 29, 1999).

A related motion is Plaintiff's Motion to Correct Scrivener's Errors in Plaintiff Roland Martineau's Memorandum of Law (Docket No. 42, filed January 27, 1999) and Plaintiff's amended Memorandum of Law in Opposition to the Defendants' Motion for Summary Judgment (Docket No. 43).

### II. Background

At all times relevant to this case, Defendant Judith Kurland ("Kurland") was the director of the City of Boston Department of Health and Hospitals.

Plaintiff Roland Martineau ("Martineau") was a nurse practitioner employed by Boston City Hospital ("BCH") in the Employee Health Services unit. The Employee Health Services unit is responsible for conducting pre-employment physicals for newly hired City of Boston employees and reinstatement physicals for City employees who are resuming their employment after an accident or illness. The unit also provides episodic care and immunizations for Department of Health and BCH employees.

While assigned to the Employee Health Services, Martineau was an active member of the Service Employees International Union, Local 285. In late 1988, Martineau complained to representatives of his union about conditions in BCH that he thought were unsafe. Outside investigation sponsored by the union ensued in December, 1988.

Martineau proffers the affidavit of Deloris Williams (Docket No. 40, Ex. C), who avers that she attended a meeting that Kurland also attended in late 1988. Kurland allegedly expressed anger at Martineau's action of calling in outside scrutiny upon BCH and said that Martineau "had to go." Martineau's supervisor, Sally Bunce–Turner ("Bunce–Turner"), then allegedly said that she could get rid of Martineau because Martineau had a reputation as a "boob man." Both Kurland and Bunce–Turner deny having made these statements.

From that point on, Martineau alleges, Kurland and Bunce–Turner engaged in a campaign to bring about the termination of Martineau's employment.

Beginning in December, 1988, Martineau began receiving every few months written disciplinary warnings for various alleged infractions. Following is a brief chronology of the accusations leveled against Martineau:

(1) December, 1988—failed to address safety concerns to his superiors at BCH before bringing those concerns to outside investigators;

(2) January, 1989—(a) failed to address safety concerns to his superiors at BCH before bringing those concerns to outside investigators, (b) left blank prescription forms in his desk against department policy, (c) excused patients from work too liberally;

(3) February, 1989—complaint by a patient that Martineau had acted unprofessionally towards patient;

(4) March, 1989—(a) admitted person who was not ill as patient in order to discuss union business, (b) numerous complaints received against Martineau about inappropriate breast exams during pre-employment physicals, (c) inappropriate "PPD" on patient;

(5) October, 1989—excessive absenteeism;

(6) February 2, 1990—improperly failed to request the results of a blood test that Martineau had ordered for a patient;

(7) April, 1990—improperly refused care to a patient; and

(8) June, 1990—Martineau suspended for two days for improperly sending a pregnant patient for a chest x-ray.

Martineau denies the truth of some, but not all, of the infractions of which he was accused. He claims also that other employees had committed similar mistakes in the past but that he was the only employee receiving written disciplinary warnings for the mistakes.

In February, 1991, one of Martineau's patients, Ann Rogers ("Rogers"), filed a complaint against Martineau with the Hospital's Office of Affirmative Action ("OAA"). In her complaint, Rogers alleged that Martineau had inappropriately touched her breasts while giving her a vaccination. The OAA instituted an investigation of the event, conducted by Jose Vincenty ("Vincenty"), Assistant Director of Affirmative Action.

After performing his investigation, Vincenty prepared a report of his findings. In a draft of the report, Vincenty recommended that Martineau be retrained on giving injections but that insufficient evidence existed to determine that sexual harassment had occurred. Hand-written comments by someone other than Vincenty on this draft indicated that the evidence was sufficient to find that sexual harassment had occurred. In the final draft of the report, the conclusion was altered and found that Roger's complaint was credible. The report recommended that Martineau be disciplined for sexual harassment.

Martineau was suspended for four months. Martineau appealed the decision to an arbitrator under provisions of the union Collective Bargaining Agreement. The arbitrator determined that the City of Boston had "not demonstrated that Roland Martineau was guilty of a pattern of sexual harassment." (Docket No. 40, Ex. A.33, p. 11). Accordingly, the arbitrator set aside the suspension and awarded Martineau back-pay for the four-month suspension.

Martineau asserts that "when he returned to work, [his] situation became so intolerable—he was no longer allowed to work in a clinical setting, and he was shunned by colleagues and patients—that he suffered from depression, took sick leave, and eventually had to resign in the spring of 1998." (Docket No. 43, p. 3).

Martineau filed a claim in the Massachusetts Superior Court against Bunce–Turner and Vincenty alleging libel and slander and interference with employment. These claims were dismissed on January 26, 1995. Martineau did not appeal the dismissal.

Martineau filed the instant action on August 16, 1995 against the City of Boston and Kurland. He contends that the allegations of sexual harassment, the investigation by Vincenty, and the four-month suspension were part of a concerted effort by Kurland and Bunce–Turner to "get rid of" Martineau.

The complaint contains the following counts: (Count I) Interference with Advantageous Relations, (Count II) Unlawful Attempted Termination and Unlawful Suspension in Violation of Public Policy, (Count III) Violation of the Massachusetts Civil Rights Act, (Count IV) Violation of the Right to Substantive Due Process, (Count V) Defamation, and (Counts VI and VII) Violation of rights for which a remedy is available under 42 U.S.C. § 1983.

In a Memorandum and Order dated January 4, 1996 (Docket No. 12), this court dismissed Martineau's first count—interference with advantageous relations.

Defendants now seek summary judgment on all of Martineau's other counts.

### III. Issues Bearing on the Merits of Defendant's Motion for Summary Judgment

### A. Summary Judgment Standard

A court should grant summary judgment only if the court, viewing the evidence in the light most favorable to the non-moving party, determines that no genuine dispute of material fact exists and that the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record showing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant satisfies that burden, then the non-moving party must demonstrate that "every essential element of its claim or defense is at least trialworthy." *Price v. General Motors Corp.*, 931 F.2d 162, 164 (1st Cir.1991).

### B. The Section 1983 Claims (Counts VI and VII)

### (1) Introduction

Section 1983 is not in itself the source of substantive rights; instead it provides a remedy for violations of federal rights elsewhere conferred. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). The basis for Martineau's Section 1983 claims (Counts VI and VII) is that the "unlawful decision to terminate the plaintiff for his expressive acts" violated his First Amendment rights. (Docket No. 43, p. 17).

Defendants contend that they are entitled to judgment as a matter of law on Counts VI and VII because (1) plaintiff has not shown that the City of Boston had a policy or custom that caused the alleged mistreatment of Martineau, (2) plaintiff has not shown a causal link between his whistle-blowing or his union activity and his termination, and (3) Kurland is entitled to summary judgment based on qualified immunity.

### (2) Municipal Liability

Municipal liability under Section 1983 may be imposed only if a municipal "policy" or "custom" caused the plaintiff's injury. *Swain v. Spinney*, 117 F.3d 1, 11 (1st Cir. 1997) (quoting *Board of County Comm'rs v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997)). Plaintiff admits that municipal liability cannot be based upon *respondeat superior*. He asserts, however, that

Kurland was the Director, and chief policymaker, of the Department. Her acts and pronouncements can therefore fairly be said to represent official policy. Thus, her edict that the plaintiff "had to go" because

of his union and other protected activities constitutes a government policy, even if the policy was unlawful, for which suit under § 1983 may fairly be brought.

Docket No. 43, p. 17.

*Pembaur v. City of Cincinnati* established that the act or statement of a municipality's chief policy-maker may constitute "policy" for the purposes of Section 1983 liability. *See* 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

Not all acts of a policy-making official give rise to liability, however. In *St. Louis v. Praprotnik,* the Supreme Court declared, "[w]hen an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (actions of the directors of two municipal organizations allegedly in retaliation against an employee's exercise of his free speech right not the municipality's employment policy because a civil service commission could review employment decisions).

■ In the instant case, as in *Praprotnik,* Kurland did not have final authority as to the city's employment policy. By Martineau's own admission, the city of Boston had a formal policy as of May, 1990 against "discrimination or retribution for bringing health and safety issues to the attention of [a] department safety representative or [union] safety committee." (Docket No. 40, Ex. A.27). Any action after May, 1990 (which includes all of the more serious actions taken against Martineau) by Kurland or someone working under her direction to retaliate against Martineau was therefore a "subordinate's departure" from the city's policy, so that the city is not liable.

Another reason for determining that no municipal policy of retaliation existed is that the doctrine of municipal liability for actions of officials does not make a "municipality liable for intentional torts ... [where the] employee had stepped outside the scope of employment to wreak private vengeance and retaliation." *Lynch v. City of Boston,* 989 F.Supp. 275, 285 (D.Mass.1997). *Lynch* states,

To support liability of the scope plaintiff claims here, the court would have to conclude that the municipality's granting authority to a department head to hire, fire, supervise, and discipline employees and independent contractors to do work within that designated department is authority to set a policy of retaliation against free speech within that department.

*Id.* Thus, the authority to hire and fire in itself does not carry with it the authority to create an employment policy of retaliating against employee exercise of free speech. I reach the same determination in the present case.

The defendant municipality is entitled to summary judgment on the Section 1983 claim based upon the failure of the plaintiff to show that a policy or custom existed that led to the deprivation of plaintiff's rights.

**(3) Qualified Immunity**

The Court of Appeals for the First Circuit has endorsed a two-prong test to evaluate a defense of qualified immunity. *See Swain v. Spinney,* 117 F.3d at 9. First, a question of law must be considered as to whether "the constitutional right in question [was] clearly established at the time of the alleged violation." *Id.* Second, a question of law must be considered, even if no dispute as to any material fact exists, as to whether a "reasonable, similarly situated official [would] understand that the challenged conduct violated that established right." *Id.* If the answer to these two questions is yes, then the official is not entitled to a defense of qualified immunity.

As of 1991, the right of public employees to speak on issues of public importance without reprisal from superiors was well-established as a matter implicating the First Amendment. *See Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

The second prong of the *Swain* analytic structure requires the court to determine whether a reasonably prudent official would know that the alleged conduct violated the

law. It is not necessary that "the very action in question has previously been held unlawful." *El Dia, Inc. v. Rossello*, 165 F.3d 106 (1st Cir.1999). Nonetheless, the analysis is very fact-specific.

> This court has made it crystal clear ... that identifying some abstract constitutional right extant at the time of the alleged violation does not itself show that the conduct alleged is a violation of 'clearly established law.' Instead, the focus must be upon the particular conduct engaged in by (or attributed to) the defendants; immunity is forfeited only if a reasonable official would clearly understand that conduct to be a violation of the Constitution. The need to focus on specific facts is so well-settled that the issue need not be discussed further.

*Rivera–Ramos v. Roman*, 156 F.3d 276, 279–80 (1st Cir.1998).

▆ In the instant case, both legal and factual complexities exist that stand in the way of a determination that a reasonable official would have known that the conduct Martineau alleged against Kurland would violate clearly established law. First, in assessing claims of retaliation for exercise of free speech, a balancing test must be applied, weighing the employee's First Amendment interest and the public's interest in the information against any countervailing governmental interest. *See O'Connor v. Steeves*, 994 F.2d 905, 915 (1st Cir.1993) (citing *Pickering v. Board of Educ.*, 391 U.S. 563, 568–575, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), *cert. denied, Town of Nahant, Mass. v. O'Connor*, 510 U.S. 1024, 114 S.Ct. 634, 126 L.Ed.2d 593 (1993)). When a balancing test must be employed, unless the facts are so one-sided that the result would be obvious, "reasonable public officials cannot be expected to know what the outcome of application of the test will be, and therefore cannot be expected to know that what is being done will be a violation of a clearly established right." *Lynch*, 989 F.Supp. at 288.

In addition to this legal complexity, Martineau's allegations are not factually so certain to lead to liability for First Amendment retaliation that a reasonably prudent official would have realized that what Kurland is accused of was illegal. Martineau, as part of a retaliation claim, "must show that the protected expression was a substantial or motivating factor in the adverse employment decision." If Martineau meets this burden, Kurland must then be given an opportunity to prove that the decision would have been the same regardless of the retaliatory motive. *O'Connor*, 994 F.2d at 913.

▆ In this case, Martineau was charged with an apparently bona fide sexual harassment complaint from a patient. The report of the investigator recommended discipline. A reasonably prudent official could not say for certain that Martineau's case would survive both elements of the *O'Connor* analytic structure. That is, given the facts of Martineau's case, it could not have been predicted that a court would find that the suspension was motivated by a desire for retaliation. It was even less clear that a court would find that the decision would have been different in the absence of a retaliatory motive.

Therefore, I determine that Kurland is entitled to summary judgment on the basis of qualified immunity.

### (4) Causation

It is not necessary to address defendants' causation argument as I have determined that summary judgment is appropriate for both defendants on other grounds.

### C. The Substantive Due Process Claim

Two alternate and independent grounds exist for granting summary judgment on Martineau's substantive due process claim.

First, "where a particular amendment [of the United States Constitution] provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 1714, 140 L.Ed.2d 1043 (1998) (quoting *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)).

■ In this case, plaintiff's allegations, to the extent that they involve issues of federal law, are that he was retaliated against for exercising his right to free speech on a matter of public concern. Thus, Martineau's "substantive due process claim" falls within the framework of a First Amendment retaliation claim. *See, e.g., O'Connor*, 994 F.2d 905, 912 ("A government employee retains the First Amendment right to speak out, as a citizen, on matters of public concern, so long as the employee's speech does not unduly impede the government's interest, as employer, in the efficient performance of the public service it delivers through its employees"). Because the First Amendment "provides an explicit textual source of constitutional protection," a substantive due process claim is not viable.

■ A second and independent reason for granting summary judgment on Martineau's substantive due process claim is that the allegations do not rise to the level of a substantive due process violation.

Substantive due process is not a "font of tort law," creating liability "whenever someone cloaked with state authority causes harm." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708 at 1717–18, 140 L.Ed.2d 1043. Rather, "the Due Process Clause is violated by executive action only when 'it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *Id.* at 1717 (quoting *Collins v. Harker Heights*, 503 U.S. 115, 128, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). "Arbitrary in the constitutional sense" is "only the most egregious official conduct." *Id.* at 1716 (quoting *Collins*, 503 U.S. at 129, 112 S.Ct. 1061).

In deciding a motion for summary judgment, a court need not credit "conclusory allegations, improbable inferences, and unsupportable speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990). Martineau's allegations that Kurland was behind the sexual harassment complaint or that she influenced investigation are just that. Martineau has not proffered evidence sufficient to support a finding that Rogers' complaint was fabricated. Likewise, although reasonable inferences may be drawn from circumstantial evidence, the comments on the first draft of Vincenty's report do not, without more, justify a finding that Kurland was influencing Vincenty's investigation. Indeed, Vincenty states that the comments were probably written by a woman named Sandra Warren, the assistant director of the Personnel Office who reviewed the draft report.

Martineau has proffered evidence sufficient to support a finding that Bunce–Turner, perhaps as a result of Martineau's whistle-blowing, was scrupulously documenting Martineau's errors so that Martineau's employment might be terminated. This conduct, however, even if proved, would not rise to the level required to constitute conduct that "shocks the conscience." Martineau's employment was not terminated; he was not physically intimidated. In short, the only acts for which evidence has been proffered sufficient to support a finding that they were in retaliation for Martineau's whistle-blowing are possible rumors-spreading about Martineau and a series of discipline warnings. I determine that, as a matter of law, this alleged conduct does not rise to the level of "shocking the conscience."

## D. The State–Law Claims

Having disposed of the underlying federal claims in this action, this court has discretion as to whether it exercises supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c) (district court "may" decline jurisdiction after dismissing all claims over which it has original jurisdiction). *See also Camelio v. American Federation*, 137 F.3d 666, 672 (1st Cir.1998).

Ordinarily, in making this determination, the district court must

> engag[e] in a pragmatic and case-specific evaluation of a variety of considerations that may bear on the issues. Among the factors that will often prove relevant to this calculation are the interests of fairness, judicial economy, convenience, and comity.

*Id.* (citations omitted).

In cases involving the employment of state and local officials,

there is special reason why state judges should referee disagreements about whether and when state or local officials may be fired. Where this is so, and where ... there are few economies in a federal court resolution, the better course is ordinarily to dismiss the state claims without prejudice and leave them to local courts.

*Flynn v. City of Boston,* 140 F.3d 42, 48 (1st Cir.1998).

█ Martineau's state-law claims should be dismissed unless economies result from federal disposition that outweigh the "special reason" to prefer state-court resolution of this case. No reason exists to believe that resolution in this court will be more expeditious or less expensive to the parties and to the public than resolution in state court. The issues involved in the federal claims addressed here are substantially different from those involved in Martineau's state-law claims. I conclude that it is appropriate to dismiss Martineau's state-law claims without prejudice.

## ORDER

For the reasons stated in the Memorandum and Order of January 4, 1996 and the Opinion of February 8, 1999, it is ORDERED:

(a) Plaintiff's Motion to Correct Scrivener's Errors (Docket No. 42, filed January 27, 1999) is ALLOWED.

(b) Plaintiff's claim for interference with advantageous relations (Count I) is DISMISSED.

(c) Defendants' Motion for Summary Judgment (Docket No. 37, filed December 11, 1998) is ALLOWED in part and DENIED in part, as follows: summary judgment is GRANTED on Counts IV, VI and VII of the complaint but is otherwise DENIED.

(d) The clerk is directed to enter forthwith on a separate document a Final Judgment as follows:

For the reasons stated in the Memorandum and Order of January 4, 1996 and the Opinion of February 8, 1999, it is ORDERED:

(1) Plaintiff's claim for interference with advantageous relations (Count I) is DISMISSED.

(2) All federal-law claims in this case are DISMISSED WITH PREJUDICE. The federal-law claims are the claims alleged in Counts IV, VI, and VII.

(3) All remaining state-law claims are DISMISSED WITHOUT PREJUDICE because in the exercise of discretion this court declines to continue to exercise supplemental jurisdiction over them now that all federal claims have been dismissed with prejudice.