**Fillimon D. KOWTONIUK, Appellant,**

v.

**Walker H. QUARLES, Jr., acting president, VSC, et al., Appellees.**

No. 75–1432.

United States Court of Appeals, Fourth Circuit.

Argued June 11, 1975.

Decided Oct. 22, 1975.

James T. McKenna, Washington, D.C., for appellant.

Walter H. Ryland, Asst. Atty. Gen. (Andrew P. Miller, Atty. Gen., and D. Patrick Lacy, Jr., Deputy Atty. Gen., on brief), for appellees.

Before RUSSELL, FIELD and WIDENER, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

By this action, the plaintiff sought both a monetary judgment and injunctive relief on account of the alleged termination of his employment as a teacher at Virginia State College in violation of his due process rights. The District Court, at the conclusion of all the evidence at trial, ordered judgment for the defendants.[1] The plaintiff appeals. We affirm.

The plaintiff began teaching part-time at Virginia State College in 1961 and full-time in 1965. At the time he became a full-time faculty member, there was, it seems clear, some discussion of the plaintiff's academic credentials, particularly with reference to his work towards a doctorate degree. The college suggests that the completion of his course work for such degree was a condition of his employment, though the plaintiff disputes this. In any event, it is undisputed that there were repeated discussions of the doctorate degree between the plaintiff and the college authorities and the plaintiff provided the college with an unauthenticated copy of the graduate courses completed by him, which he contended satisfied the course requirements for the degree. These discussions apparently came to a head on July 13, 1970, when the acting president of the college wrote the plaintiff that his contract would not be "approved because it was dependent upon the presentation of the proper credentials from the Ukrainian Free University attesting to the fact that the doctorate degree had been received by and conferred upon you."[2] In the same letter, though, the college pointed out "[i]n addition, it has been noted from your personnel record that there seems to be evidence of irregularities such as indications of your poor performance in the classroom, your adoption of grading methods contrary to the best interest of the department, your

---

1. The defendants are the members of the Board of Visitors of the college, the president of the college and certain members of the faculty and administrative staff of the institution.

2. While the denial of renewal meant the plaintiff would not teach in the approaching school year, the college handbook provided that the plaintiff would be entitled to be paid for that next year, and this was done.

failure to work cooperatively with faculty and administration, and of your unprofessional conduct." The acting president continued by stating that, after a careful review of the plaintiff's "record," the administration of the college had "some concern regarding your qualifications for continued service at Virginia State College." The letter concluded by advising the plaintiff that, if he wished to contest the action of the administration, he might "request a hearing within ten days" as "outlined in Section IV, A and B on pages 47 and 48 of the Virginia State College Manual of Administrative Policies and Procedures."

By letter dated July 20, 1970, the plaintiff requested a hearing but stated that he was going to Europe on July 27 in order to attend commencement exercises at Ukrainian Free University in Munich, Germany, and would not return until September 4, 1970. The Dean of the college on September 8, 1970, wrote the plaintiff that, while the college had received "a photo copy of a temporary certificate from the Ukrainian Free University," it was necessary, as declared in an Administrative Notice, that the college "receive directly from the Ukrainian Free University, a copy of the appropriate document certifying that you have been awarded the Doctor of Philosophy degree." He advised the plaintiff in this letter, also, that "[u]ntil the charges set forth in Dr. Quarles' letter dated July 13, 1970 have been cleared through the normal procedure, the administrative officials of the College do not have the authority to issue you a contract for employment." The letter again referred to the hearing and extended time for it but, in the meantime, specifically warned the plaintiff "to refrain from assuming the role of instructor at the College, such as attending classes and using the office formerly assigned to you." The plaintiff countered almost immediately with an action in the State Court to enjoin the college from terminating his employment until given a hearing. The State Court granted a temporary injunction until the college should give him a proper hearing.

Following the entry of that order and apparently after some discussion with its legal counsel, the college, through its Dean, wrote the plaintiff on February 22, 1971, that he would be given "an opportunity to be heard and to defend yourself against the allegations," as specified, "in accordance with the provisions of the Faculty Handbook of Virginia State College." On March 5, 1971, the plaintiff was notified that the hearing would take place on March 19, 1971. The hearing, however, was delayed and on March 23, 1971, the Dean of the college gave a more detailed statement of the charges, which consisted primarily of certain specific instances of "unprofessional" conduct.

The hearing itself was held on April 27, 1971, before the faculty committee appointed to hear the case. This committee had originally been appointed by the Chairman of the Personnel Committee of the Faculty Senate as a Grievance Committee because it was initially assumed that the plaintiff's demand presented a grievance. Later, it was determined that the matter was not a faculty grievance, as described in the Faculty Handbook and that the hearing was to be conducted by an *ad hoc* committee appointed by the Chairman of the Faculty Senate. The Chairman of the Faculty Senate then made a purely formal re-appointment of the committee as originally named by the Chairman of the Personnel Committee of the Faculty Senate. So constituted, the committee proceeded to accord the plaintiff a hearing on the charges. After taking over five hundred pages of testimony, and receiving some sixty-one exhibits, the committee filed a report of more than twenty pages. In its report, the committee dismissed the charge relating to the plaintiff's credentials, gave "relatively minor weight" to certain other of the charges, but primarily on the basis of a finding of "unprofessional conduct" in failing and refusing "to serve on important departmental committees," "to work cooperatively with members of his department," and in evicting "a colleague from a class which

the colleague had been assigned to teach," as charged in the specifications act set forth in the letter of March 23, 1971, it found that the evidence warranted the dismissal of the plaintiff. This report of the committee was submitted to the Board of Visitors of the college. After a hearing at which the plaintiff was given an opportunity to be heard and to rebut the findings of the committee, the Board upheld the findings of the committee and approved the plaintiff's dismissal.

▨ It is the contention of the plaintiff that, in these proceedings leading to his dismissal by the Board of Visitors of the college, he was denied both procedural and substantive due process. His claim of procedural due process violation relates to the composition of the Faculty Committee and the alleged coercive influence exercised over that committee by the administrative officers of the college. His attack on the composition of the committee is quite technical. The members of the committee were initially appointed by Professor Richie, Chairman of the Faculty Grievance Committee. Plaintiff does not make any claim of bias on the part of Professor Richie. When it was later determined that the Chairman of the Faculty Senate rather than the Chairman of the Faculty Grievance Committee should appoint the committee, the Chairman of the Faculty Senate made a purely formal reappointment of the very same personnel as had previously been named by the Chairman of the Grievance Committee. But the plaintiff asserts that the Chairman of the Faculty Senate was prejudiced against him and was thereby disqualified to appoint the committee. The argument is, as we have said, purely technical. The Faculty Senate Chairman exercised no independent discretion in designating the members of the hearing committee. He simply gave formal approval to what had already been done by the Chairman of the Grievance Committee of the Faculty Senate. His participation in the appointment process was so inconsequential that it could not have prejudiced the plaintiff

in any way. Moreover, the asserted prejudice of the Chairman of the Faculty Senate rests on an alleged conversation between a Professor Stronach and the Senate Chairman. Professor Stronach was called as a witness at trial by the plaintiff. He was not questioned about this alleged conversation. The only reference to the alleged conversation is in a letter of Professor Stronach to the plaintiff, offered in evidence at the trial. This *unsworn* statement in a letter to the plaintiff, a statement that Professor Stronach did not affirm when called as a witness by the plaintiff, would in any event be insufficient to disqualify the Faculty Senate Chairman from merely confirming the prior appointment of the committee.

▨ There is an odd offshoot of this phase of the argument of the plaintiff. He claims that when he raised this charge of the Faculty Senate Chairman's disqualification, the committee refused to rule on the plea of disqualification, and referred the claim back to the Faculty Senate for decision. We do not agree with this reading of the record. When the plaintiff's counsel made this contention, the committee, through its acting Chairman, merely stated that it lacked authority to pass on the propriety of its own appointment, which was a question to be addressed properly to the appointing body itself, the Faculty Senate. This meant that, if plaintiff wished to pursue this contention, he should do so by an appeal to the Faculty Senate. The plaintiff made no such appeal and has no standing to complain, though one should add that we find nothing in the record to sustain the claim, if properly raised.

▨ The plaintiff's argument that the hearing committee was coerced in its determinations by the college administration rests upon the language used in the letter of March 23, 1971, as written by the Dean to the Chairman of the Faculty Committee. In this letter, the Dean suggested that the committee "concentrate upon the establishment" of the charges

as made in the letter, which constituted the asserted basis for the discharge. By the use of the word "concentrate," the appellant argues, the Dean, in effect, was telling the committee to find the charges correct. We do not so construe the language. We consider "concentrate upon," as used in this letter, as having a meaning of "focus upon." We feel that by this language, the Dean was simply directing the committee to "concentrate" on, or "focus" on the charges as listed, and to determine whether they justified dismissal. So construed, the letter was not objectionable. That this is the proper construction of the letter, it would seem, follows from the fact that a copy of the letter was sent to both the plaintiff and his counsel. Had it been intended as a coercive expression it is unlikely a copy would have been sent to the plaintiff and his counsel. The letter, as we read it, was intended simply to set forth the issues to which the hearing should be confined. It was intended for the information and benefit of both the Faculty Committee and the plaintiff. We find in the letter no basis for impugning the findings of the Faculty Committee.

■ To sum up our conclusions on the claim of a denial of procedural due process: The plaintiff was given adequate notice of the charges on which the right to dismiss was based and timely notice of the hearing on those charges; he was accorded the right to counsel, the right to confront and to cross-examine the witnesses against him; and there was no showing of legal bias in the appointment of the hearing committee or of any attempt at coercion of the committee. Under these circumstances, there is no basis for any claim of a violation of procedural due process in the hearing.

■ The assertion of a violation of substantive due process rests on the alleged want of a rational basis for the conclusions reached by the committee and the Board of Visitors. It is conceded that the scope of judicial review in this instance extends only to determining whether there is substantial evidence to sustain those administrative conclusions. The District Court found that "the charges considered by the faculty committee were supported in the record by substantial evidence." We find no error in this ruling.

The plaintiff's principal argument in this connection is that the college officials determined as early as 1969 to dismiss him, that they first premised their right to terminate on the failure of the plaintiff to substantiate his completion of the requirements for a doctorate, and that, when this claim proved inadequate, they shifted to the other grounds, most, if not all, of which arose subsequent to the original determination to dismiss and were purely shams or after-thoughts. While it may well be that the original complaint against the plaintiff related to a substantial extent to his academic degrees, it was not so restricted. In the first letter to the plaintiff, the acting president of the college referred to other matters which had caused the college administration to consider the non-renewal of plaintiff's contract of employment. And these other matters, as detailed in this first letter, were not substantially different from those given the plaintiff in the letter of the Dean on March 23, 1971 or from those which the committee found to justify the plaintiff's dismissal. The charges on which the committee and the Board of Visitors decided supported dismissal were thus not "after-thoughts" but were in the case from the beginning. But even if they had concerned matters that developed after the initial letter of 1970, that would not render invalid the action taken, provided the charges were sufficient to support the action taken. Simply because a college has given an inadequate reason for dismissal of a teacher at some earlier time does not prevent it from asserting a right to dismiss for reasons that may have arisen after the initial cause, provided, of course, timely notice of these new charges is given the plaintiff and adequate opportunity to defend against them is extended. There can be no denial that adequate advance notice of the

charges on which the dismissal was justified and full opportunity to defend against them were given the plaintiff. It is not for us to determine whether the charges were true; that was the responsibility of the Faculty Committee. Our jurisdiction only extends to determining whether there was clear error in the ruling of the District Court that there was any evidence in the record to support the charges on which the committee sustained the discharge and that the charges were not so trivial as to render the discharge arbitrary. We find no such clear error in the ruling of the District Court.

The judgment of the District Court is accordingly affirmed.