Guiseppe PANDOLFI DE
RINALDIS, Plaintiff,

v.

Angie Varela LLAVONA,
et al., Defendants.

No. Civ. 97–2699(DRD).

United States District Court,
D. Puerto Rico.

Aug. 16, 1999.

**428**

John E. Mudd, Ortiz Toro & Ortiz Brunet, San Juan, PR, for Plaintiff.

Marie L. Cortes–Cortes, Dept. of Justice of Puerto Rico, Federal Litigation Div., San Juan, PR, Jose R. Gaztambide–Aneses, Gaztambide & Plaza, Hato Rey, PR, Frank Gotay–Barquet, Feldstein, Gelpi & Gotay, San Juan, PR, Pedro Soto–Rios, San Juan, PR, William Vazquez–Irizarry, Municipality of San Juan Office of Legal Affairs, San Juan, PR, for Defendants.

### OPINION AND ORDER

DOMINGUEZ, District Judge.

Before the Court is a Motion to Dismiss presented by the defendant, Ms. Belarmina Morales, pursuant to Fed.R.Civ.P. 12(b)(6); (Docket No. 33). Plaintiff, Mr. Guiseppe Pandolfi de Rinaldis ("Pandolfi"), alleged violations of the First, Fifth and Fourteenth Amendments and 42 U.S.C. § 1983 (1995). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(3), (4). (Docket No. 1). Additionally, Pandolfi has invoked the Court's supplemental jurisdiction over his state claims. *See* 28 U.S.C. § 1367; (Docket No. 1). For the reasons set-forth herein, the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART.**

### I

### THE STANDARD UNDER FED.R.CIV.P. 12(b)(6)

When deciding a Motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) the Court must accept as true all well-pleaded factual claims, and indulge all reasonable inferences in the plaintiff's favor. *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 190 (1st Cir.1996); *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). Dismissal is appropriate only when the facts alleged, taken as true, do not justify recovery for the plaintiff. Fed.R.Civ.P. 12(b)(6). Thus, in order to survive a motion to dismiss, plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988). Although all inferences must be made in the plaintiffs' favor, this court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson,* 83 F.3d at 3.

Moreover, when considering a motion to dismiss under Rule 12(b)(6) "our focus [must be] limited to the allegations of the complaint." *Litton Indus., Inc. v. Colon,* 587 F.2d 70, 74 (1st Cir.1978) (internal quotations omitted). Specifically, the inquiry should be "whether a liberal reading of [the complaint] can reasonably admit of a claim . . . ." *Id.; see also Doyle,* 103 F.3d at 190. Recently, in *Wagner v. Devine,* 122 F.3d 53 (1st Cir.1997) the First Circuit held that a Court must "affirm a dismissal for failure to state a claim only if it clearly appears that, on the facts alleged, the plaintiff cannot recover on any viable theory." *Id.* at 55. The Supreme Court decades ago explained in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), that

> [i]n appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Id.* at 45–46, 78 S.Ct. 99. With this standard in mind, all of the facts alleged in the complaint are accepted as true. *See*

*Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989); *Gooley,* 851 F.2d at 514.

## II

### THE FACTUAL ALLEGATIONS

The key facts, as Mr. Pandolfi states them in his complaint, are as follows: On May 16, 1996, the General Council on Education of Puerto Rico (hereinafter "GCE" or "Council") appointed the plaintiff, Mr. Pandolfi, as its Executive Director for a period of five years, pursuant to P.R.LAWS ANN. tit. 3, § 397g (Supp.1993–94). Mr. Pandolfi was to serve as the Council's "administrative officer" and remain in office "at the Council's volition." (Docket No. 1, p. 3).

Mr. Pandolfi's duties and functions, *inter alia,* included:

(3) Select the personnel he/she deems is needed to perform the functions of the Council and recommend their appointment without being subject to section 1301 et seq. of this title, known as the 'Puerto Rico Public Service Personnel Act.' The officials and employees of the General Council and its Executive Di-

rector shall be subject to the provisions of sections 862 *et seq.* [sic] of this title, known as the 'Commonwealth of Puerto Rico Government Ethics Act.' [1]

*Id.* § 397g(3).[2] Plaintiff contends that according to this subsection (3), every member of the GCE, including the Members of the Council that appointed him, as well as all other officials and employees of the GCE were subject to the provisions stated in P.R.LAWS ANN. tit. 3, § 1822 (1992) of the "Ethics in Government Act of the Commonwealth of Puerto Rico" (hereinafter "Ethics in Government Act").[3]

In June of 1997, Mr. Pandolfi began reporting to his superiors several violations to the Ethics in Government Act as well other laws of the Commonwealth of Puerto Rico committed by Members of the GCE. In August of 1997, two Members of the Council demanded that Mr. Pandolfi provide them with evidence "of their alleged wrongdoings, which was provided in September [of 1997]."%[4] (Docket No. 1, p. 4). Then, on October 17, 1997, "the Council met and in a five to two vote, decided to fire Mr. Pandolfi." (Docket No. 1, pp. 2, 4). Mr. Pandolfi was not given

1. The English translation of this statutory disposition states that the officials and employees of the General Council and its Executive Director shall be subject to the provisions of "sections 862 et seq. of this title," in reference to the 'Commonwealth of Puerto Rico Government Ethics Act.' However, that translation is incorrect. The Ethics in Government Act of the Commonwealth of Puerto Rico, as it is properly titled in English, is not published in P.R.LAWS ANN. tit. 3 § 862 *et seq.* (1992), but in § **1801** *et seq.* (1992).

2. It is pertinent to cite in part the text of P.R.LAWS ANN. tit. 3 § 397g (Supp.1993–94):
 The Executive Director shall have the following duties and functions:
 (1) ....
 * * * * * *
 (7) Contract any professional, consulting and technical services, with the prior authorization of the Council, that are needed to comply with the purposes of this chapter.
 (8) Draft and submit the Council's functional expense budget for its approval, and administrate it.

 (9) *Keep a register and a complete and detailed accounting of all of the Council's expenses, disbursements and income, pursuant to any laws and regulations that may apply.*

 * * * * * *

 (13) Submit periodic reports to the Council on the work performed.
 *Id.* (Emphasis added).

3. This is the officially translated name of the Act in English. *See* P.R.LAWS ANN. tit. 3, § 1801 (1992). Subsection (c) states in relevant part that "No public official or employee shall request or accept any asset whatsoever of monetary value as payment for carrying out the duties and responsibilities of his employment other than the salary, wage or compensation to which he is entitled because of his public duties or employment." *Id.,* § 1822(c).

4. Namely, codefendants Carmen H. Leví and Olga Ramos de Julia.

any explanation. The day before Plaintiff's removal, he was preparing yet another report "denouncing irregular use of Council funds and equipment by members of the Council." (Docket No. 1, p. 4).

Following Pandolfi's termination, the Council Members began denying Mr. Pandolfi access to his office without providing justification. Moreover, the Council hired a security guard in order to deny Pandolfi entrance to his office and his personal property found therein. In response, plaintiff refused to return the Council's property he had until he was granted access to his office and property. To this effect, the Council and plaintiff agreed to meet on several occasions with the purpose of mutually exchanging property, but these efforts were repeatedly unsuccessful. On one occasion, Mr. Pandolfi called the press to denounce the Council's course of action. Although the press was allowed to enter his office, Mr. Pandolfi was not. On another occasion, the Council informed the Police of Pandolfi's refusal to return the official assigned vehicle. When Police officers spoke to Mr. Pandolfi, he proceeded to fully explain the situation. As a result the Police agreed not to repossess the vehicle.

The GCE allegedly prepared a notarized list of all of Mr. Pandolfi's belongings the day they were stored in boxes. Eventually, the parties met on November 6, 1997 to exchange property, but since the Council refused to show proof of the alleged notarized list, they agreed to meet again on November 10, 1997. The next day, on November 7, 1997, three Special Agents from the Special Investigations Bureau of Puerto Rico [5] visited Mr. Pandolfi at his home, allegedly, with a warrant from a District Attorney to seize the Council's property. Mr. Pandolfi promptly complied. Plaintiff's property was returned the next day (November 8) without the alleged notarized list of his belongings. Ten days later, on November 18, 1997, Mr. Pandolfi brought this suit against five (5) Members of the GCE, all in their personal and official capacity.[6] Plaintiff first claims that his termination violated both the property interest rights he had over his employment, and his due process rights (procedural and substantive), under the Fifth and Fourteenth Amendments. As his second cause of action, Mr. Pandolfi claims that his discharge constituted a retaliation for his continued denunciations of Council Members' illegal activities, which he argues, are protected by the First and Fourteenth Amendments of the Constitution of the United States since they are "subjects ... of clear public interest...." (Docket No. 1, p. 6). Furthermore, Mr. Pandolfi requested injunctive relief pursuant to 42 U.S.C. § 1983, seeking reinstatement to his position as Executive Director of the GCE. Then, on August 18, 1998, codefendant Belarmina Morales ("Ms. Morales" or "defendant"), moved to dismiss all claims against her, pursuant to Fed.R.Civ.P. 12(b)(6).

After examining the complaint, and indulging every reasonable inference in the plaintiff's favor, the Court finds that Mr. Pandolfi's first cause of action (the alleged procedural and substantive due process violations) is unsustainable. As such, codefendant's motion to dismiss plaintiff's first cause of action is **GRANTED.** However, because the statements purported by plaintiff are the type of "speech" the First Amendment protects, the Court finds that plaintiff's cause of action under the First Amendment is viable. Moreover, defendant has asserted that due to the doctrine of qualified immunity she is not liable for

---

**5.** The Special Investigation Bureau of the Department of Justice of the Commonwealth of Puerto Rico (or in Spanish "Negociado de Investigaciones Especiales del Departamento de Justicia del Estado Libre Asociado de Puerto Rico," or "N.I.E." in short). *See* P.R.Laws Ann. tit. 3 § 138 *et seq.* (1982).

**6.** The named defendants are: Angie Varela–Llavona; Rafael Reyes–Javier; Carmen H. Leon; Olga Ramos de Julia; and Belarmina Morales.

monetary damages. Nevertheless, the Court finds that the complaint discloses insufficient facts to adequately resolve the qualified immunity issue at this motion to dismiss stage. Accordingly, defendant's Motion to Dismiss plaintiff's First Amendment claim is **DENIED**.

## III

## PLAINTIFF'S CLAIM OF ENTITLEMENT

■ To support a claim under 42 U.S.C. § 1983,[7] plaintiff must establish, first, that the rights, privileges and immunities granted to him by the Constitution or laws of the United States were violated; and second, that the violation was committed by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *see also* Erwin Chemerinsky, *Federal Jurisdiction* 422 (2d ed., 1994). The Court examines first plaintiff's due process arguments brought under § 1983.

### A. *Procedural Due Process.*

Plaintiff first claims that the GCE violated the entitlement rights he had over his job, protected by the due process clauses of the Fifth and Fourteenth Amendments of the Constitution. His contention, however, is unfounded.

■ It is clearly established law that, to fashion a procedural due process claim under the fourteenth amendment, a plaintiff must have possessed some constitutionally cognizable interest; that is, a recognized protectable property interest.

*Parratt*, 451 U.S. at 536, 101 S.Ct. at 1913 (1981); *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). If a position is clearly terminable at the will of his superiors an employee under § 1983 cannot claim a property interest over it. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), *rehearing denied* 417 U.S. 977, 94 S.Ct. 3187, 41 L.Ed.2d 1148 (1974); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

■ Furthermore, each state can define the specific terms of any government employment through legislation. *Bishop*, 426 U.S. at 344, 96 S.Ct. at 2077. Thus, local law is pivotal for the determination of whether an employee has in fact an "entitlement" to his or her job under the due process clauses. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982) ("The hallmark of property ... is an individual entitlement grounded in state law"); *Bishop*, 426 U.S. at 344, 96 S.Ct. at 2077 ("the sufficiency of the claim of entitlement must be decided by reference to state law"). *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709 ("Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law"). Moreover, it has long been established that

[a] public employee has a constitutionally protected interest in continued employment where he has a reasonable ex-

---

7. 42 U.S.C. § 1983 states:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable...."

pectation, arising out of state statute, rules or the contract, that he will continue to be employed. Thus, ordinarily, **one who can be removed only for "cause" has a constitutionally protected "property" interest, while one whose job is held "at will" does not.** *See Perkins v. Board of Directors,* 686 F.2d 49, 51 (1st Cir.1982) (citations omitted; emphasis added); *Bishop,* 426 U.S. at 343–47, 96 S.Ct. at 2076–2079 (1976); *see also Ventetuolo v. Burke,* 596 F.2d 476, 481 (1st Cir.1979) ("A constitutionally protected property interest has not been recognized where the employee serves at the will and pleasure of the public employer.").

Accordingly, the trier of facts must examine the terms of the employment established by local law. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709; *see also* 2 R.D. Rotunda & J.E. Nowak, *Treatise on Constitutional Law: Substance and Procedure* § 17.5(d) at 635–37 (1992).

■ In the case at hand, the Court finds that Mr. Pandolfi did not have a property interest in his position as Executive Director of the GCE. The reason is simple: the statute that created the position of Executive Director of the GCE states that he "shall remain in office ... for a five-year period," but the statute nevertheless conditions plaintiff's stay in office at "**the Council's volition.**"[8] P.R.LAWS ANN. tit. 3, § 397g (Supp.1993–94) (emphasis added). This disposition leaves the Court with no room for interpretation. Clearly, Mr. Pandolfi was an "at-will" employee, and as such he cannot claim a property right to his position as Executive Director. *See Perkins,* 686 F.2d at 51. Therefore,

his procedural due process claim under the Constitution is meritless.

#### B. *Substantive Due Process.*

Plaintiff further asserts that his firing implicated a separate branch of constitutional rights: those of substantive due process. His argument hinges on the contention that the GCE fired him without providing any reasons. Mr. Pandolfi's claim lacks merit.

"Not every property interest is entitled to the protection of *substantive* due process." *Coyne v. City of Somerville,* 770 F.Supp. 740 (D.Mass.1991). In fact, "the Supreme Court several times ... has sidestepped the question of whether the Fourteenth Amendment provides substantive protection against arbitrary and capricious academic decision-making." *Newman v. Com. of Mass.,* 884 F.2d 19, 25 (1st Cir. 1989). The Supreme Court has gone only so far as "assuming" such a right may exist, "[b]ut it has not explicitly held that such right exists, nor has it described its contours...." *Newman v. Burgin,* 930 F.2d 955, 961 (1st Cir.1991) (Holding, *inter alia,* that the primary concern of the due process clause is *procedure,* not the substantive merits of a decision.).[9] Moreover, the Supreme Court's view in this area of constitutional doctrine has been greatly limited to reviewing academic decisions of public educational institutions. *See, e.g., Regents of University of Michigan v. Ewing,* 474 U.S. 214, 223, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985); *Board of Curators v. Horowitz,* 435 U.S. 78, 91–92, 98 S.Ct. 948, 955–956, 55 L.Ed.2d 124 (1978).[10]

---

8. Mr. Pandolfi's position as Executive Director was created by Article 7.01 of Act No. 68 of August 28, 1990, P.R.LAWS ANN. tit. 3, § 397g (Supp.1993–94).

9. In *Newman,* 930 F.2d at 961, the Court expressed: "[W]e recognize that, unless a fundamental liberty protected elsewhere in the Constitution (*e.g.,* free speech) is at stake, the primary concern of the due process clause is *procedure,* not the substantive merits of a decision."

10. Likewise, the Court notes that there is a line of cases that discuss this type of violation of substantive due process in the First Circuit (*i.e.,* arbitrary and capricious acts) which are mainly restricted to cases pertaining to academic decision of public educational institutions. *See Newman v. Burgin,* 930 F.2d 955 (1st Cir.1991); *Newman v. Com. of Mass.,* 884 F.2d 19 (1st Cir.1989); *Perkins v. Board of Directors,* 686 F.2d 49 (1st Cir.1982); *Willens v. Univ. of Mass.,* 570 F.2d 403 (1st Cir.1978); *Downing v. LeBritton,* 550 F.2d 689 (1st Cir.

In *Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985), the Supreme Court explained:

we have assumed, without deciding, that federal courts can review an academic decision of a public educational institution under a substantive due process standards.... But remembering Justice Brandeis' admonition **not to 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied....'**

*Id.* at 222, 106 S.Ct. 507 (emphasis added).

■ On the other hand, the First Circuit has explicitly recognized the existence of a substantive due process right. *See Newman v. Com. of Mass.,* 884 F.2d at 25.[11] In doing so, the First Circuit has observed that there are essentially two approaches to the matter of substantive due process. *See Pittsley v. Warish,* 927 F.2d 3, 6 (1st Cir.1991), *cert. denied,* 502 U.S. 879, 112 S.Ct. 226, 116 L.Ed.2d 183 (1991); *see also Coyne v. City of Somerville,* 770 F.Supp. at 746, n. 13. Under the first approach ("conscience-shocking acts"), plaintiff can allege a violation to substantive due process without having to show the violation of a specific liberty or property interest, but only if the state's conduct is "conscience shocking." *See Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209–10, 96 L.Ed. 183 (1952).

With respect to the second approach ("arbitrary and capricious acts"), plaintiff must demonstrate a violation of an identified liberty or property interest protected by the due process clause. *See Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923); *see also Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983) (state must provide medical care to persons with serious medical needs while in state custody); *Youngberg v. Romeo,* 457 U.S. 307, 315, 319, 102 S.Ct. 2452, 2457, 2459, 73 L.Ed.2d 28 (1982) (individual committed to a state institution has a protected liberty interest in receiving reasonably safe living conditions and freedom from unreasonable bodily constraints); *Ingraham v. Wright,* 430 U.S. 651, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977) (corporal punishment of a student inflicted by a public school teacher violates substantive due process); *Landrigan v. Warwick,* 628 F.2d 736, 741–42 (1st Cir.1980) (substantive due process implicated where a policeman uses excessive force in the apprehension of a suspect). But essentially, "[b]oth of these alternative approaches to substantive due process analysis have focused on state action undertaking unwanted manipulations of an individuals body." *Harrington v. Almy,* 977 F.2d 37, 43 (1st Cir.1992).

Under the first approach, the First Circuit has found " 'conscience shocking' con-

---

1977); *Tardif v. Quinn,* 545 F.2d 761 (1st Cir.1976); *Wishart v. McDonald,* 500 F.2d 1110 (1st Cir.1974); *McEnteggart v. Cataldo,* 451 F.2d 1109 (1st Cir.1971); *Drown v. Portsmouth Sch. Dist.,* 451 F.2d 1106 (1st Cir. 1971); *see also Black v. Sullivan,* 561 F.Supp. 1050, 1061 (D.Me.1983); *but see Pittsley v. Warish,* 927 F.2d (1st Cir.1991).

11. In *Newman v. Com. of Mass.,* 884 F.2d at 25 the Circuit Court held that: "even if in the future this circuit or the Supreme Court rejects the view that a public employee has a substantive due process right in these circumstances, our recognition of that right [is] clear ... and it is still viable law today." Moreover, most circuits that have considered the issue either have explicitly held or suggested that the Fourteenth Amendment protects pub-

lic employees from arbitrary and capricious government action affecting their employment. *See, e.g., Gargiul v. Tompkins,* 704 F.2d 661, 668 (2d Cir.1983), *vacated on other grounds,* 465 U.S. 1016, 104 S.Ct. 1263, 79 L.Ed.2d 670 (1984); *Barnett v. Housing Authority of Atlanta,* 707 F.2d 1571, 1577–78 (11th Cir.1983) (requiring improper motive in addition to arbitrary action); *Lyle v. Brenna,* 589 F.2d 475, 476–77 (10th Cir.1978); *Parham v. Hardaway,* 555 F.2d 139, 142 (6th Cir.1977); *Miller v. Dean,* 552 F.2d 266, 268 (8th Cir.1977); *Kowtoniuk v. Quarles,* 528 F.2d 1161, 1165–66 (4th Cir.1975). *But see Brown v. Brienen,* 722 F.2d 360 (7th Cir.1983) (no substantive due process protection for state-created property interest in employment).

duct **where state actors engage in extreme or intrusive physical conduct.**" *Souza v. Pina,* 53 F.3d 423, 427 (1st Cir. 1995) (emphasis added); *Harrington,* 977 F.2d at 43–44 (1st Cir.1992) (a reasonable fact-finder could find "conscience shocking" conduct where a police officer that was dismissed for charges of child abuse was required to take a penile plethysmograph[12] as a condition for his reinstatement); *see also Garcia v. Miera,* 817 F.2d 650, 655 (10th Cir.1987) (corporal punishment of students may "shock the conscience" if it "caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism . . . that it amounted to a brutal and inhumane abuse of official power") (quoting *Hall v. Tawney,* 621 F.2d 607, 613 (4th Cir.1980)); *cf. Breithaupt v. Abram,* 352 U.S. 432, 436, 77 S.Ct. 408, 410, 1 L.Ed.2d 448 (1957) (Holding the use of a hypodermic needle to extract blood from an unconscious accident victim in order to test for alcohol did not violate substantive due process because said procedure "has become routine in our everyday life.").

■ In the instant case, the Court is of the opinion that, on the facts of the complaint, a reasonable fact finder would not consider the Council's alleged actions "conscience shocking," particularly because the Council's alleged actions were not "highly intrusive physical conduct." *Harrington,* 977 F.2d at 43. No matter how "despicable and wrongful" Mr. Pandolfi's termination, it is simply insufficient to rise to the level of a constitutional violation under the standard established in *Rochin. See Rochin,* 342 U.S. at 172, 72 S.Ct. at 209;

*see also Emmons v. McLaughlin,* 874 F.2d 351, 353 (6th Cir.1989); *Keyes v. Albany,* 594 F.Supp. 1147, 1155 (N.D.N.Y.1984). Moreover, it is clearly established that not all unlawful conduct constitutes a constitutional violation, for "[t]he Constitution does not protect against all intrusions on one's peace of mind." *Pittsley,* 927 F.2d at 7; *see also Coyne v. City of Somerville,* 770 F.Supp. 740, 747 (D.Mass.1991). In fact, even in cases where a state has employed violence or force against a citizen, the Supreme Court has found that such acts do not necessarily violate the Constitution. *See e.g., Oklahoma City v. Tuttle,* 471 U.S. 808, 818, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985) (not every instance of the use of "unreasonable force in effecting an arrest constitutes a violation" of the Constitution.).

Clearly, plaintiff did not experience the kind of "mean-spirited brutality" that is capable of offending even "hardened sensibilities." *See Brown v. Hot, Sexy and Safer Productions, Inc.,* 68 F.3d 525 (1st Cir.1995) (holding that acts of a public high school of compelling minor teenagers to attend a sexually explicit AIDS awareness assembly without parental consent was not "conscience shocking"). Thus, under the first approach ("conscience-shocking"), the Court finds that plaintiff's substantive due process rights have not been infringed. The Court reaches this decision further recognizing that the threshold for alleging such claims in the First Circuit is high. *See Brown,* 68 F.3d at 532 ("our review of the case law indicates that the threshold for alleging such claims is high and that the facts alleged here do not rise to that level.").[13]

12. A penile plethysmograph is used by psychologist in order to assess a man's sexual profile by the placement of a gauge on the his penis while he views various sexually explicit slides of both adults and children.

13. Moreover, in *Harrington v. Almy,* 977 F.2d at 44, the First Circuit court explained that [t]he evolving case law governing unwanted bodily intrusions or manipulations has weighed several relevant considerations. Once it is established that . . . the state is

entitled to the information the bodily intrusion is designed to obtain, the means used will be measured by its reasonableness in light of the need to obtain the evidence in this way. To the degree the procedure would not be considered offensive even by the most delicate and is routine, it will be less likely to involve a constitutional violation. By contrast, nonroutine manipulative intrusions on bodily integrity will be subject to heightened scrutiny to determine, *inter*

Under the second approach ("arbitrary and capricious"), plaintiff must allege, and eventually prove, a violation to "**a specific constitutional guarantee or liberty interest** protected by the substantive due process clause." *Pittsley v. Warish,* 927 F.2d 3, 7 (1st Cir.1991) (emphasis added). As discussed above, a public employee "who can be removed only for 'cause' has a constitutionally protected 'property' interest, while one whose job is held 'at will' does not." *Perkins,* 686 F.2d 49 (1st Cir.1982). Accordingly, the Court finds that under the second theory of substantive due process, plaintiff's claim simply cannot "stand in the absence of ... a constitutionally protected property or liberty interest." *Willens v. University of Massachusetts,* 570 F.2d 403 (1st Cir. 1978).

In conclusion, not even under a liberal reading of the facts alleged, the plaintiff's claims (procedural and substantive) under the due process clause of the Fourteenth Amendment are simply not actionable. *Doyle,* 103 F.3d at 190 (1st Cir.1996) (citing *Litton Indus., Inc.,* 587 F.2d at 74) ("The question is whether a liberal reading of (the complaint) can reasonably admit of a claim....").

However, the Court acknowledges that even if a person lacks a substantive or procedural due process right, the government may not deprive someone of a job for any other constitutionally forbidden reasons:

> For at least a quarter of a century, this Court has made clear that even though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech.
>
> *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 72, 110 S.Ct. 2729, 2736, 111 L.Ed.2d 52 (1990).

Accordingly, the Court now turns to the plaintiff's First Amendment claim.

## IV

### FIRST AMENDMENT CLAIM

As his second cause of action, plaintiff contends that his termination as Executive Director of the GCE was due to his continued denunciations of the Council Members' illegal activities. Moreover, plaintiff affirms that the denunciations are the type of "speech" protected by the First Amendment of the Constitution of the United States since they are "subjects ... of clear public interest...." (Docket No. 1, p. 6). The Court agrees.

At the outset however, it is important to emphasize that "[t]he legal standard in this area [of First Amendment rights] is notoriously fuzzy" essentially "because the cases deal under the same head with very different problems and 'justifications.'" *Flynn v. City of Boston,* 140 F.3d 42, 46 (1st Cir.1998). Therefore, it is of vital importance to first define the specific First Amendment issue presented in the instant case.

Immediately, the Court notes that the plaintiff has not claimed his dismissal was due to his political affiliation. What Mr. Pandolfi contends essentially that he was discharged **because he was reporting to his supervisors the occurrence of fraud or illegality within the GCE**—the illegal use of Council funds and equipment. Hence, the issue presented here concerns **whistleblowing,** and not discharge for political reasons. Accordingly, the Court finds *O'Connor v. Steeves,* 994 F.2d 905 (1st Cir.1993) controlling in this case.[14]

---

*alia,* whether there are less intrusive alternatives available.

14. In *O'Connor* plaintiff was appointed by a Board of Selectmen "to administer" the a government agency. After notifying certain

## A. *"Whistleblowing" Claim*

■ As a general rule, a government employee has a First Amendment right to freely speak on matters of public concern, "so long as the employee's speech does not unduly impede the government's interest, as employer, in the efficient performance of the public service it delivers through its employees." *O'Connor* 994 F.2d at 912; *see also Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968); *Rankin v. McPherson*, 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Brasslett v. Cota*, 761 F.2d 827 (1st Cir.1985). In order to determine if a plaintiff has an actionable "whistleblowing" claim, the Court must follow a three-step test. *O'Connor*, 994 F.2d at 912–13.

■ *First*, the Court must ascertain if the employee was speaking upon issues of public concern or, to the contrary, upon matters only of personal interest. *Connick*, 461 U.S. at 147–48, 103 S.Ct. at 1690. *Second*, if the employee's speech concerned matters of public concern, then a balance of interests must be made between the employee's First Amendment interests and those of the government in promoting the efficient performance of its employees. *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734. *Brasslett*, 761 F.2d at 839. *Third*, if the employees First Amendment interest

in speaking out on matters of public concern are found to outweigh those of the government, the plaintiff must then show that the government's decision to terminate his job was substantially motivated by the employee's protected expressions (*i.e.*, causation). *See O'Connor* 994 F.2d at 913. Once the Court reaches this point, it must afford the government the fair opportunity of showing "by a preponderance of the evidence that [it] would have reached the same decision [of discharging the employee] ... even in the absence of the protected conduct." *Mt. Healthy City School Dist. Bd. of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 569 (1977).[15]

### 1) *Matters of Public Concern*

While it is true "that [not] all matters which transpire within a government office are of public concern," *see Connick*, 461 U.S. at 149, 103 S.Ct. at 1691, in this case plaintiff's statements "were not limited to internal personnel procedures, affecting only himself and other ... employees. Rather, [plaintiff's] revelations **directly implicated a topic of inherent concern to the community—official misconduct by an incumbent [appointed] official."** [16] *O'Connor*, 994 F.2d at 915 (emphasis added).[17] Other federal circuit courts have also recognized the inherent public nature of the type of speech Mr. Pandolfi has made.[18]

irregularities within the Board that appointed him, he was terminated from his job.

**15.** The defendant, of course, may show at trial that: 1) termination was due to a nonprotected reason other than a First Amendment reason; or 2) that the instant case is a "mixed-motive case," under *Mt. Healthy*.

**16.** Notwithstanding cases discussing the issue of misconduct on the part of public employees deal mainly with *elected* officials, this Court is of the opinion that the same reasoning is applicable here. That is, in cases where the public official(s) can be classified as "high-ranking"—like the Members of the GCE—the citizenry will have great interest in their conduct.

**17.** Consequently, the Court may obviate "the need for a threshold analysis of his dominant motive for speaking out on these issues." *O'Connor*, 994 F.2d at 915; *cf. Pickering*, 391 U.S. at 572, 88 S.Ct. at 1736 (recognizing that government employees are, as a class, the members of a community most likely to have informed and definite opinions about the allocation of funds).

**18.** *See e.g., Patrick v. Miller*, 953 F.2d 1240, 1247–48 (10th Cir.1992) (Perceived illegalities in City's budgeting activities constituted topic of inherent public concern; "[s]peech which discloses any evidence of corruption, impropriety or other malfeasance on the part of city officials, in terms of content, clearly concerns 'matters of public import' ") (*quoting Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir.

In the case at hand, Mr. Pandolfi was hired to serve as the Executive Director of the GCE. According to this agency's enabling act, this position entailed the crucial responsibility of administrating the GCE, **which meant Mr. Pandolfi had the obligation to register and account for all of the Council's expenses, disbursements and income.** *See* P.R.LAWS ANN. tit. 3, § 397g(9) (Supp.1993–94).[19] Thus, when Mr. Pandolfi allegedly revealed the occurrence of illegal activities within the GCE, he was essentially complying with his statutory duties.

■ Therefore, it is clear that under *Connick,* Mr. Pandolfi was speaking on matters that inherently concerned the public, and not matters of personal interest. That is, according to the complaint plaintiff specifically denounced fraudulent, illegal, and/or corrupt practices on the part of high-level appointed governmental officials. Accordingly, satisfying the first prong of the constitutional test, the Court finds that plaintiff's First Amendment interest is truly public in nature.

## 2) *The Pickering Scale*

Having inquired the nature of Mr. Pandolfi's expressions and finding they are inherently of public concern, we now proceed to the second prong:

Under *Pickering,* [391 U.S. 563, 88 S.Ct. 1731] we are required to balance the significance of the interest served by the public-employee speech—including the employee's interests in communicating, and the interests of the community in receiving, information "on matters of public importance"—against the govern-

mental employer's legitimate interests in preventing unnecessary disruptions and inefficiencies in carrying out its public service mission.

*O'Connor,* 994 F.2d at 915; *see also Pickering,* 391 U.S. at 568–575, 88 S.Ct. at 1734–38.

■ In the order of our society, an allegation of abuse of public office is a matter traditionally occupying "the highest rung of the hierarchy of First Amendment values." *Connick,* 461 U.S. at 145, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708. Thus, another consideration regarding the type of speech Pandolfi allegedly made is the interest of the community. It has long been held that the citizenry has an interest in the "[f]ree and unhindered debate on matters of public importance." *Pickering,* 391 U.S. 563, 573, 88 S.Ct. 1731, 1737, 20 L.Ed.2d 811 (1968). Moreover, "[t]he public has a significant interest in encouraging legitimate whistleblowing so that it may receive and evaluate information concerning the alleged abuses of these public officials." *O'Donnell v. Yanchulis,* 875 F.2d 1059, 1062 (3d Cir.1989). In the *Pickering* balance, the type of information that Mr. Pandolfi's speech entails great benefit to our democratic society in that it fosters unlimited debate regarding issues of public concern. Therefore, Mr. Pandolfi's expressions must be afforded great consideration and weight. *See O'Connor* 994 F.2d at 915, *citing Versarge v. Township of Clinton,* 984 F.2d 1359 (3d Cir.1993) ("on plaintiff's side of the balance, we must also consider the interests of the public in plaintiff's speech"); *citing also O'Donnell,*

1988)); *Breuer v. Hart,* 909 F.2d 1035, 1038 (7th Cir.1990) (County Sheriff's alleged conversion of County property was "plainly of public concern in its substance"); *Brawner v. City of Richardson,* 855 F.2d 187, 191–92 (5th Cir.1988) (Police Department's alleged misconduct in covering up internal investigations was "a matter of public interest and therefore deserves constitutional protection").

19. Again, the legal obligations of the Executive Director, among other things, were 1) to administer the Council's expense budget, P.R.LAWS ANN. tit. 3, § 397g(8) (Supp.1993–94); 2) **to keep a register and a complete and detailed accounting of all of the Council's expenses, disbursements and income, pursuant to any laws and regulations that may apply,** P.R.LAWS ANN. tit. 3, § 397g(9), (Supp.1993–94) (emphasis added); and 3) to submit periodic reports to the Council. P.R.LAWS ANN. tit. 3, § 397g(13) (Supp.1993–94).

875 F.2d at 1061 ("With regard to the employee's interest, we must also take into account the public's interest.").

On the other side of the balance is the government's interest in the efficiency of its employees, and the avoidance of disruption in the workplace. *See Rankin*, 483 U.S. at 388, 107 S.Ct. at 2899 (1987); *see also Versarge*, 984 F.2d at 1366. The Court must of course afford the local government an opportunity to present evidence at trial pertaining to any particular interest the government may have had to justify Pandolfi's termination that may outweigh Pandolfi's expressions and/or to prove that his statements were erroneous and/or to prove that he would have been terminated anyway even in the absence of the protected conduct.

### 3) *Causation*

The last step of the *Pickering* analysis requires that the Court ascertain if the employee's protected speech was a substantial and motivating factor in the termination of his job. "[I]f the plaintiff meets this test, the defendant governmental entity must [then] be afforded an opportunity to show 'by preponderance of the evidence that [it] would have reached the same decision .... even in the absence of the protected conduct.'" *O'Connor*, 994 F.2d at

913 (*citing Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576).

■ In the instant case, Mr. Pandolfi contends that he was terminated in retaliation for his continued denunciations of Council Members' alleged illegal activities. The issue is then, whether the moving party (the government) can show by preponderance of the evidence that it would have reached the same decision even in the absence of plaintiff's protected expressions. The Court reiterates however, that the defendant must be afforded an opportunity to put forth factual reasons that could justify Mr. Pandolfi's dismissal.[20]

Additionally, as explained before, the Court must infer that Mr. Pandolfi acted prudently when he denounced the alleged irregularities to his supervisors—namely the GCE—, (Docket No. 1, p. 3), because at this stage of a Motion to Dismiss, all inferences must be made in the plaintiff's favor.[21]

Therefore, at this stage the Court finds that from the complaint the plaintiff has reasonably asserted a First Amendment Claim to which this Court can provide a relief. *Litton Indus., Inc.*, 587 F.2d at 74 (the Court must determine if a liberal reading of the complaint can reasonably admit a claim).

---

20. Note, however, that if at this motion to dismiss stage "matters outside the pleading [were] presented to and not excluded by the court, the motion [would] be treated as one for summary judgment...." Fed.R.Civ.P. 12(b); *see also Garita Hotel, Ltd. v. Ponce Federal Bank*, 958 F.2d 15, 18–19 (1st Cir. 1992).

21. It is important to emphasize that under Fed.R.Civ.P. 12(b)(6), the Court has the obligation to accept as true the well-pleaded factual averments contained in the complaint, while at the same time draw all reasonable inferences from the allegations **in favor of the plaintiff**. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 276, 96 S.Ct. 2574, 2577, 49 L.Ed.2d 493 (1976); *see also Correa–Martinez*, 903 F.2d at 51 (1st Cir.1990); *Dartmouth Review v. Dartmouth College*, 889 F.2d at 16 (1st Cir.1989). Accordingly, plaintiff has claimed that in "June of 1997, he [began] reporting **to his superiors** violations of [the law]...." (Docket No. 1, p. 2) (emphasis added). Moreover, plaintiff has specifically indicated that "[o]n August of 1997 ... [two] members of the Council[ ] demanded evidence ... of their alleged wrongdoings, which was provided in September." *Id.* Inasmuch as plaintiff reported the alleged irregularities to "his superiors," at this motion to dismiss stage the Court reasonably infers that Ms. Morales—as plaintiff's superior—was duly informed of the denunciations at the time of Mr. Pandolfi's termination. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996) ("accepting as true all well-pleaded factual averments and indulging all reasonable inferences in the plaintiff's favor"); *see also Leatherman v. Tarrant County N. I. & C. Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993); *Correa–Martinez*, 903 F.2d at 52.

## V

### QUALIFIED IMMUNITY

 Finally, the Court must ascertain whether defendant Ms. Morales may avail herself of the doctrine of qualified immunity. Under 42 U.S.C. § 1983, a public employee can avoid liability for compensatory damages if that employee can demonstrated that a violation of a clearly established right under federal law did not occur or that he or she acted with objective reasonableness. *See Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982); *Camilo–Robles v. Hoyos,* 151 F.3d 1, 5–6 (1st Cir. 1998). A public employee entitled to claim such immunity will be subject to liability for damages

> "if he knew or reasonably should have known that the action he took within the sphere of his official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a depravation of constitutional rights or other injury to the [plaintiff].... A compensatory award will be appropriate only if the [defendant] ... acted with such an impermissible motivation or with such disregard to the [plaintiff's] clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith."

*Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975) (citation omitted).

The inquiry here entails a two-step analysis, comprised of both subjective and objective components.[22] The first prong (subjective) requires a determination of whether plaintiff's constitutional rights were violated, *County of Sacramento v. Lewis,* 523 U.S. 833, —— n. 5, 118 S.Ct. 1708, 1714 n. 5, 140 L.Ed.2d 1043 (1998). Under the second prong (objective reasonableness) plaintiff's rights must have been clearly established at the time of the events in question, *Id.; see also Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991); *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (for an official to be liable for damages, the unlawfulness of his conduct must be apparent in light of preexisting law).

First, at this motion to dismiss stage, the Court has found that codefendants infringed upon Mr. Pandolfi's constitutional right of "free speech," thus satisfying the initial (subjective) prong. The question then is whether (objectively) plaintiff's First Amendment right was clearly established at the time of Pandolfi's termination.[23]

 "[S]tate officials exercising discretionary authority are entitled to qualified immunity insofar as their conduct does not transgress clearly established constitutional or federal statutory rights of which a reasonably prudent official should have been aware." *Buenrostro v. Collazo,* 973 F.2d 39, 42 (1st Cir.1992). Moreover, a right is "clearly established" when the "contours of the rights [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039 (1987). That is, the court

---

**22.** "[A]lthough [this] test was announced in the specific context of the liability of school board members for acts of 'school discipline', it is beyond dispute that a much broader range of officials and official actions are included within the test's reach." *Downs v. Sawtelle,* 574 F.2d 1, 11 (1st Cir.1978); *see also O'Connor v. Donaldson,* 422 U.S. 563, 576–77, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975).

**23.** In opposition, the only two defenses that a defendant can assert are 1) that plaintiff's rights were not clearly established at the time of his termination, and 2) that she acted in good faith or that she reasonably did not know, or could not have known, that plaintiff's rights were being violated. *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *Wood,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

must ascertain whether a reasonable GCE Member situated in the same circumstances should have understood that the challenged conduct violated that established right. *See St. Hilaire v. City of Laconia,* 71 F.3d 20, 24 (1st Cir.1995). Furthermore, whether the rights alleged are "clearly established" is a question of law for the court. *Elder v. Holloway,* 510 U.S. 510, 516, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994). In examining this matter, the court must "take the law as it stood at the time of the conduct in question." *Rivera–Ramos v. Roman,* 156 F.3d 276, 279 (1st Cir.1998). Nevertheless, a forceful caveat has been established for the courts when determining qualified immunity: that "identifying some abstract constitutional right extant at the time of the alleged violation does not itself show that the conduct alleged is a violation of 'clearly established' law." *Rivera–Ramos,* 156 F.3d at 279–280; *see also Ringuette v. City of Fall River,* 146 F.3d 1, 5 (1st Cir.1998) ("[i]t is not enough for the constitutional right to be 'clearly established' at a highly abstract level...."). Rather, a determination of qualified immunity always entails a fact-specific analysis, essentially because it is a "context-specific test of objective legal reasonableness." *Camilo–Robles v. Hoyos,* 151 F.3d 1, 7 (1st Cir.1998). Hence, "the focus must be upon the particular conduct engaged in by (or attributed to) the defendants; immunity is forfeited only if a reasonable official would clearly understand *that conduct* to be a violation of the Constitution." *Id.,* at 280. Thus, "[t]he need to focus on **specific facts** is [ ]well settled...." *Id.* (Emphasis added).

■ In the present case, Pandolfi's First Amendment right to freely speak about the GCE's alleged illegal acts has

been "clearly established."[24] The more precise question then is whether, upon the specific facts of the complaint, a reasonable Member of the GCE would have known that the decision to terminate Pandolfi was violative of plaintiff's First Amendment rights.[25] However, the Court must here proceed with caution because this fact-specific inquiry leaves "ample room for mistaken judgments." *Malley v. Briggs,* 475 U.S. 335, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Moreover, it has been recognized that "[s]omething of a 'black hole' exists in the law as to how to resolve factual disputes pertaining to qualified immunity ... prior to trial." *Ringuette,* 146 F.3d at 6. Therefore, "[t]o avoid duplication, judges have sometimes deferred a decision until the trial testimony was in or even submitted the factual issues to the jury." *Id.*

Hence, because "[o]n motions to dismiss, the facts to be assumed are normally those alleged in the complaint," *Rivera–Ramos,* 156 F.3d at 280, the Court examines the facts presented in Pandolfi's complaint as they are presented therein. After a close inspection of the pleadings, and further recognizing the need to focus on specific facts, the Court finds that the complaint discloses insufficient facts to adequately resolve the qualified immunity issue at this motion to dismiss stage. The qualified immunity of codefendant, Ms. Morales, is denied without prejudice of the same being requested under a summary judgment standard enabling the court to focus on specific facts.

## VI

## CONCLUSION

In order to adjudicate defendant's motion to dismiss, the only inquiry required

---

24. At a motion to dismiss level, the court must infer that plaintiff's rights under the First Amendment overrides GCE's possible interest in promoting the efficiency of its employees. *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 276, 96 S.Ct. 2574, 2577, 49 L.Ed.2d 493 (1976).

25. In his complaint plaintiff seems to suggest that the defendants were violating the Ethics in Government Act, P.R.LAWS ANN. tit. § 1801 *et. seq.* (1992). Nonetheless, a violation of a state statute, in itself, would not necessarily give rise to a cause of action under 42. U.S.C. § 1983. *See Elder v. Holloway,* 510 U.S. 510, 516, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994).

by Fed.R.Civ.P.. 12(b)(6) is whether "on the facts alleged, the plaintiff cannot recover on any viable theory." *Wagner*, 122 F.3d at 55 (1st Cir.1997). Furthermore, it is a long "accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99.

In the instant case, Mr. Pandolfi contends that he consistently reported to his superiors the illegal use of government property by some Members of the GCE, and that as a result he was fired from the position of Executive Director. The course of action taken by the GCE, if proven at trial, is prohibited by the Constitution.[26] Therefore, taking all of plaintiff's allegations as true, the court finds that plaintiff has asserted a claim to which this Court can provide a relief. *Litton Indus., Inc.*, 587 F.2d at 74. This alone is sufficient to deny Ms. Morales' motion to dismiss as to plaintiff's First Amendment claim.

**WHEREFORE,** codefendant's Motion to Dismiss plaintiff's (procedural and substantive) due process claims is **GRANTED,** and as to plaintiff's First Amendment claim, the Motion to Dismiss is hereby **DENIED.** The qualified immunity defense is **DENIED WITHOUT PREJUDICE** of reiteration under the summary judgment standard.

**IT IS SO ORDERED.**

---

26. Pursuant to 28 U.S.C. § 1367, plaintiff has also sued under Puerto Rico's general tort and vicarious liability statutes. *See* P.R.Stat. Ann. tit. 31, § 5141, 5142 (1990). At this stage, it is sufficient to state that the Court—in its discretion—refuses to decline its jurisdiction over said state claims.